# HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* FITCH.

No. 243.   Argued January 5, 8, 1940.—Decided January 29, 1940.

*Mr. Arnold Raum,* with whom *Solicitor General Jackson, Assistant Attorney General Clark,* and *Mr. Sewall Key* were on the brief, for petitioner.

*Messrs. William D. Mitchell* and *Arnold F. Schaetzle,* with whom *Mr. Rollin Browne* was on the brief, for respondent.

Mr. Justice Douglas delivered the opinion of the Court.

Petitioner claimed that an amount of $7,128 distributed in 1933 under a so-called alimony trust to respondent's divorced wife should have been included in respondent's taxable income for that year. The Board of Tax Appeals agreed and found a deficiency, 37 B. T. A. 1330. The Circuit Court of Appeals reversed, one judge dissenting, 103 F. 2d 702. We granted certiorari because of the asserted failure of that court correctly to apply the principle involved in *Douglas* v. *Willcuts,* 296 U. S. 1.

The so-called alimony trust in question was created a few years before the divorce, while respondent and his wife were separated, and in settlement of a suit brought by her for separate maintenance. Certain premises (a hair tonic factory and a long term lease thereon) were transferred to a trustee to hold title, collect rents and after deduction of expenses to pay the wife $600 a month during her life and the balance to respondent for his life.[1] On the death of either respondent or his wife the de-

---

[1] Respondent and his wife separated in 1917. In 1919 respondent purchased a home for his wife, furnished it for her, and gave her an automobile. In the same year F. W. Fitch Co. was incorporated and acquired the assets of a predecessor partnership in exchange for 2,000 of its shares. Of these shares 1860 were issued to respondent and 10 to his wife. She was also an officer and director of the company, with a monthly salary of $300.

When the separate maintenance suit was settled in 1923, respond-

ceased's share of the income was to be paid to their children.[2] The trust was to continue at least fifteen years. On the death of both respondent and his wife the principal was to be paid over to their children. The trust was irrevocable. And while respondent covenanted to pay off certain encumbrances on the trust property, he did not underwrite in whole or in part the $600 monthly payments to his wife.

In 1925 she filed suit for a divorce in an Iowa court. A property settlement was agreed upon which included the trust agreement and, in addition, provided for a transfer to her by respondent of certain shares of stock and cash.[3] The divorce decree confirmed the property and alimony settlement.[4]

The general rule is clear. "Amounts paid to a divorced wife under a decree for alimony are not regarded as income of the wife but as paid in discharge of the general obligation to support, which is made specific by the decree." *Douglas* v. *Willcuts, supra,* p. 8. It is plain that there the alimony trust, which was approved by the divorce decree, was merely security for a continuing obli-

---

ent leased certain premises, owned by him, to the F. W. Fitch Co. for 99 years, at an annual rental of $12,000. These premises and that lease were transferred to the trustee. Upon creation of the trust the wife ceased to be an officer and director of F. W. Fitch Co. and received no further salary from it.

[2] No question of minor children is here involved, the youngest of the four children having become of age in 1927.

[3] 600 shares of stock of F. W. Fitch Co. and $23,500.

[4] "It is, Therefore, Ordered, Adjudged and Decreed, that the plaintiff, Lettie S. Fitch, be, and she is hereby, divorced from the defendant, Fred W. Fitch, absolutely; . . . that the trust agreement which is referred to in the defendant's answer as having been entered into between these parties on or about the 23rd day of April 1923 . . . be, and the same is hereby ratified and confirmed by the court; and that the property and alimony settlement made by the parties be, and it is hereby confirmed by the court."

gation of the taxpayer to support his divorced wife. That was made evident not only by his agreement to make up any deficiencies in the $15,000 annual sum to be paid her under the trust. It was also confirmed by the power of the Minnesota divorce court subsequently to alter and revise its decree and the provisions made therein for the wife's benefit. Likewise consistent with the use of the alimony trust as a security device was the provision that on death of the divorced wife the corpus of the trust was to be transferred back to the taxpayer. Respondent insists that in the instant case there is no continuing obligation to which the income of the alimony trust is applied but rather that the property and alimony settlement approved by the Iowa court effected an absolute discharge of any duty or obligation on his part to support his divorced wife. It is true that there is no covenant or guarantee to make up any deficiency in the monthly payment to his divorced wife, as there was in the *Douglas* case. And unlike that alimony trust, the instant one, though granting the taxpayer a participation in the income, irrevocably alienates the corpus. Other indicia of the use of this alimony trust as a security device for any continuing obligation of respondent are alleged to be absent by reason of the lack of power in the Iowa court to modify the decree confirming the property and alimony settlement.

The Iowa statute provides: "When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. Subsequent changes may be made by it in these respects when circumstances render them expedient." [5]

Admittedly the court under that statute has the power to modify provisions in the original decree for the con-

---

[5] § 10481, Iowa Code.

tinued support and maintenance of the wife.[6]  And it likewise seems well settled by a long line of Iowa cases that where the original decree makes no provision for alimony, there is no power subsequently to modify the decree so as to provide it.[7]  And, respondent contends, where alimony is allowed in a lump sum or a property settlement is ratified by the decree, the court retains no power to modify.

*Spain* v. *Spain*, 177 Iowa 249; 158 N. W. 529, and *McCoy* v. *McCoy*, 191 Iowa 973; 183 N. W. 377, on which respondent and the Circuit Court of Appeals place reliance are not in point since those divorce decrees, unlike the instant one, made no provision for alimony.  In *Spain* v. *Spain, supra,* the Supreme Court of Iowa specifically reserved the question of the power to modify a divorce decree involving a property settlement.  As to that it said (pp. 260–261): "As to an award in gross, or a division of the property, based upon an equitable apportionment of the property of either of the parties at the time the divorce is granted, we have no occasion to speak, for that matter is not in the case."

Likewise *Barish* v. *Barish,* 190 Iowa 493; 180 N. W. 724, cited below and urged here in support of respondent's contention, is of little aid, for in spite of a strong concurring opinion that the court had no power to modify an allowance of "gross" or "permanent" alimony, the majority applied the statute and concluded (p. 501) "Whatever the extent of the power of the court may be to make such increase, it is always slow to exercise such

---

[6] See *Corl* v. *Corl,* 217 Iowa 812; 253 N. W. 125; *Junger* v. *Junger,* 215 Iowa 636; 246 N. W. 659; *Boquette* v. *Boquette,* 215 Iowa 990; 247 N. W. 255; *Toney* v. *Toney,* 213 Iowa 398; 239 N. W. 21; *Morrison* v. *Morrison,* 208 Iowa 1384; 227 N. W. 330.

[7] *Spain* v. *Spain,* 177 Iowa 249; 158 N. W. 529; *McCoy* v. *McCoy,* 191 Iowa 973; 183 N. W. 377; *Handsaker* v. *Handsaker,* 223 Iowa 462; 272 N. W. 609; *Duvall* v. *Duvall,* 215 Iowa 24; 244 N. W. 718; *Doekson* v. *Doekson,* 202 Iowa 489; 210 N. W. 545.

154

power, except in the presence of extraordinary circumstances, such as are not present here." To be sure, there is the following strong statement in *Kraft* v. *Kraft*, 193 Iowa 602, 607; 187 N. W. 449: "We are inclined to the view that, where alimony is allowed in a lump sum, as permanent alimony, or where there is a division of the real property of the parties, as permanent alimony, the statute does not authorize a change therein, except for such reasons which would justify the setting aside or changing of a decree in any other case; that the party awarded permanent alimony is not entitled to permanent alimony and support both . . ." And in *Carr* v. *Carr*, 185 Iowa 1205; 171 N. W. 785, 787, that court stated, p. 1211: "Alimony is allowed in lieu of dower and the prior duty of support, and a review of the decree awarding or refusing same can be had only for such fraud or mistake as would authorize the setting aside or modification of any other decree." In that case the divorce decree required the husband, *inter alia,* to convey certain real estate to a trustee for the exclusive benefit of the wife to be held in trust for five years, during which time the income was to be paid over to the wife and at the end thereof the trustee, on demand, was to convey the property to her. Meanwhile, the trustee had the power to sell the property at not less than $100 an acre. Shortly before the expiration of the five-year period, the divorced husband filed a cross-petition in the divorce suit asking for a modification of the trust in order to protect his former wife from her own extravagance and her inexperience in business affairs. Apparently the relief asked was not based on the Iowa statute giving the court power to make subsequent changes in the divorce decree "when circumstances render them expedient." For the court stated that the modification of the decree was sought on the grounds (1) that the donor of the trust was entitled to have it carried out

in accordance with its terms and the real purpose for which it was created; and (2) that, in the alternative, he was entitled to have a guardian of the property appointed.

However that may be, much of the weight which respondent accords *Kraft* v. *Kraft* and *Carr* v. *Carr, supra,* seems to have been dissipated by *McNary* v. *McNary,* 206 Iowa 942; 221 N. W. 580. In that case the Supreme Court of Iowa had squarely before it the question of whether or not under the foregoing statute a decree of permanent alimony awarding personal and real property to the wife could be altered. The court after stating that it knew of no case where such a decree had been subsequently modified, added (p. 946): "This question is not argued by the parties, and we find it unnecessary to make a pronouncement thereon." And, significantly, it proceeded to apply the statute and finding that its conditions had not been satisfied, it denied the relief asked by the divorced husband.

On this state of the Iowa authorities we can only speculate as to the power of the Iowa court to modify alimony awarded in a lump sum or a property settlement ratified by a divorce decree. To be sure, *Kraft* v. *Kraft, supra,* involved some features common to the instant case, since the wife was to receive the income of $4,000 to be placed in trust by the husband or, until he placed it in trust, 5 per cent on that amount. But the refusal to modify that decree was not placed squarely, or even largely, on the lack of power to do so but on other circumstances. Furthermore, the uncertainty created by *McNary* v. *McNary, supra,* makes perhaps for even greater uncertainty where an alimony trust of the kind here involved is concerned. At least respondent has not established a necessary identity in treatment of transfers of personal or real property on the one hand and allow-

ance of income out of this kind of alimony trust on the other. Even on the authority of *Kraft* v. *Kraft, supra,* respondent has not clearly shown that in Iowa divorce law the court has lost all jurisdiction to alter or revise the amount of income payable to the wife from an enterprise which has been placed in trust. For all that we know it might retain the power to reallocate the income from that property even though it lacked the power to .add to or subtract from the corpus or to tap other sources of income.[8] If it did have such power, then it could be said that a decree approving an alimony trust of the kind here involved merely placed upon the pre-existing duty of the husband a particular and specified sanction. In that event, the case would be little different from one where the husband was directed to make specified payments to the divorced wife. And we see no reason why the rule of *Douglas* v. *Willcuts,. supra,* should not then apply.

Enough has been said to show that respondent has not sustained the burden of establishing that his case falls outside the general rule expressed in *Douglas* v. *Willcuts, supra.* If we were to conclude that this case is an exception to that rule we would be acting largely on conjecture as to Iowa law. That we cannot do. For if such a result is to obtain, it must be bottomed on clear and convincing proof, and not on mere inferences and vague conjectures, that local law and the alimony trust have given the divorced husband a full discharge and leave no continuing obligation however contingent. Only in that event can income to the wife from an alimony trust be treated under the revenue acts the same as income accruing from property after a debtor has transferred that property to his creditor in full satisfaction of

[8] Cf. *Shaw* v. *Shaw,* 59 Ill. App. 268.

his obligation—unless of course Congress decides otherwise.

The judgment of the Circuit Court of Appeals is

*Reversed.*

MR. JUSTICE REED concurs in the result.

MR. JUSTICE MCREYNOLDS is of the opinion that the udgment below should be affirmed.