## HELVERING, COMMISSIONER OF INTERNAL REVENUE, v. FULLER.

No. 427. Argued March 26, 1940.—Decided April 22, 1940.

---

*Mr. Arnold Raum,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Mr. Sewall Key* were on the brief, for petitioner.

*Mr. Francis W. Cole,* with whom *Messrs. John C. Parsons* and *Lucius F. Robinson* were on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case raises the question of the circumstances under which income paid to the taxpayer's divorced wife under a trust, the provisions of which have been approved in the divorce decree, is taxable to him. We granted certiorari because of the asserted misapplication by the Circuit Court of Appeals of the rule of *Douglas* v. *Willcuts,* 296 U. S. 1, to these facts:

On July 25, 1930, respondent and his wife, residing in Connecticut, entered into an agreement in contemplation of divorce which provided, *inter alia,* for the creation by him of a trust of 60,380 shares of Class A common stock of the Fuller Brush Co. The trust was irrevocable and was to continue for ten years. During that period all trust income was to be used for the maintenance and support of the wife, or in case of her prior decease, then for the children; or in case of their prior decease, then for the heirs of the wife or as she should provide in her will. At the expiration of the ten year period the trust property was to be transferred to her outright. The agreement provided for other property settlements, for control and custody of the children, and for waiver by respondent and his wife of all claims against each other arising out of the marital relation. It also contained an agreement on the part of respondent to pay the wife $40 per week for five years, and, if at the end of that period his annual net income exceeded by the amount of the weekly payments the sum of $60,000, to continue those weekly payments for an additional five years or for such portion thereof as his annual net income exceeded the above sum.

The wife repaired to Reno, Nevada, and obtained a divorce decree on November 12, 1930, which "ordered, adjudged, and decreed that said agreement entered into between the plaintiff and the defendant on or about the twenty-fifth day of July, 1930, be and the same hereby is approved." On December 22, 1930, respondent created the trust provided for in the agreement.[1] The corporate trustee thereunder received from the Fuller Brush Co. all the dividends and income from the trusteed shares during 1931, 1932 and 1933 and disbursed them all for the benefit of the divorced wife. On the failure of respondent to include those amounts in his tax returns for the years in question, the Commissioner assessed deficiencies. The decisions of the Board of Tax Appeals, 37 B. T. A. 1333, sustaining the action of the Commissioner, were reversed by the Circuit Court of Appeals. 105 F. 2d 903.

---

[1] The trust agreement provided that he was to transfer the 60,380 shares of stock on the books of the company from himself personally to himself as trustee and then to deliver the certificate for such shares to the corporate trustee. This was done. Also in accordance with the provisions of the trust respondent executed a dividend order against the shares directing the Fuller Brush Co. to pay all dividends to the corporate trustee. Respondent was the founder of the company and during the years in question was its president. It had outstanding only one class of voting stock, viz. Class A common. The amount outstanding during these years varied between 172,000 and 186,000 shares. Respondent owned 60,380 shares which together with the 60,380 shares under the trust constituted more than a majority of that class of stock. By terms of the trust respondent retained "exclusive voting power" of the trusteed shares during the term of the trust. If he died before its termination, the voting power would pass to the wife. During that period power to sell the stock was vested jointly in him, the wife, and the corporate trustee and could be exercised only in case all three agreed in writing. In case of such a sale, those three had the power to invest and reinvest the proceeds. They also were given the power to disburse, withhold, and accumulate the principal of the trust at their sole discretion, such power over the income being vested in the wife and the corporate trustee.

■

I. There can be no doubt but that respondent is taxable on the $40 weekly payment to the wife. That is a continuing personal obligation falling within the rule of *Douglas* v. *Willcuts, supra,* as a result of which those payments are taxable to him, not to the wife. *Gould* v. *Gould,* 245 U. S. 151. But that fact does not make the income from the trust also taxable to him. Although the provisions for the weekly payments and for the trust agreement were embodied in the same separation agreement, they were not so interrelated or interdependent as to make the trust a security for the weekly payments. Functionally they were as independent of each other as were the other property settlements from either of them.

II. Petitioner does not challenge the conclusion of the Circuit Court of Appeals that, so far as the trust agreement is concerned, the Nevada court retained no power to alter or modify the divorce decree. It seems to be admitted that under Nevada law the wife's allowance once made is final, *Sweeney* v. *Sweeney,* 42 Nev. 431; 179 P. 638, unless the decree itself expressly reserves the power to modify it, *Lewis* v. *Lewis,* 53 Nev. 398; 2 P. 2d 131, or unless the decree approves a settlement which in turn provides for a modification. *Aseltine* v. *Second Judicial District Court,* 57 Nev. 269; 62 P. 2d 701. Here no such power was reserved in the decree or in the trust agreement approved by the decree. Nor did respondent underwrite the principal or income from the trust or any part thereof or make any commitments, contingent or otherwise, respecting them, beyond his promise to transfer the securities to a trustee. But petitioner argues that the rule of *Douglas* v. *Willcuts, supra,* should nonetheless apply since the decree recognized the husband's preëxisting duty to support and defined that duty as coextensive with what the parties had themselves arranged, and since the husband simply carved out future income from property

which he then owned and devoted it in advance to the discharge of his obligation.

We take a different view. If respondent had not placed the shares of stock in trust but had transferred them outright to his wife as part of the property settlement, there seems to be no doubt that income subsequently accrued and paid thereon would be taxable to the wife, not to him. Under the present statutory scheme that case would be no different from one where any debtor, voluntarily or under the compulsion of a court decree, transfers securities, a farm, an office building, or the like, to his creditor in whole or partial payment of his debt. Certainly it could not be claimed that income thereafter accruing from the transferred property must be included in the debtor's income tax return. If the debtor retained no right or interest in and to the property, he would cease to be the owner for purposes of the federal revenue acts. See *Helvering* v. *Clifford,* 309 U. S. 331. To hold that a different result necessarily obtains where the transfer is made or the trust is created as part of a property settlement attendant on a divorce would be to hold that for purposes of the federal income tax the marital obligation of the husband to support his wife cannot be discharged. But whether or not it can be depends on state law. For other purposes, local law determines the status of the parties and their property after a decree dissolving the matrimonial bonds. See *Barrett* v. *Failing,* 111 U. S. 523. And while the federal income tax is to be given a uniform construction of national application, Congress frequently has made it dependent on state law. See *Thomas* v. *Perkins,* 301 U. S. 655, 659, and cases cited. In the instant situation, an inquiry into state law seems inescapable. For the provisions in the revenue acts [2]

---

[2] Revenue Act of 1928 (45 Stat. 791) § 24 (a) (1). The same provision appears in § 24 of the 1932 Act (47 Stat. 169).

and regulations [3] concerning the non-deductibility of "family expenses" and of "alimony" do not illuminate the problem beyond implying the necessity for an examination of local law to determine the marital status and the obligations which have survived a divorce. The Nevada cases tell us that under such a decree as was entered here the obligation to support was *pro tanto* discharged and ended. And the trust agreement contains no contractual undertaking by respondent, contingent or otherwise, for support of the wife. Hence we can only conclude that respondent's personal obligation is not a continuing one but has been discharged *pro tanto*. To hold that it was not would be to find substantial differences between this irrevocable trust and an outright transfer of the shares to the wife, where in terms of local divorce law we can see only attenuated ones. This is not to imply that Congress lacks authority to design a different statutory scheme applying uniform standards for the taxation of income of the so-called alimony trusts. A somewhat comparable statute taxing to the grantor income from a trust applied to the payment of premiums upon insurance policies on his life was upheld in *Burnet* v. *Wells*, 289 U. S. 670. But the reach of Congressional power is one thing; an interpretation of a federal revenue act based on local divorce law, quite another.

For the reasons we have stated, it seems clear that local law and the trust have given the respondent *pro tanto* a full discharge from his duty to support his divorced wife and leave no continuing obligation, contingent or otherwise. Hence under *Helvering* v. *Fitch*, 309 U. S. 149, income to the wife from this trust is to be treated the same as income accruing from property after a debtor

---

[3] Treasury Reg. 74, Arts. 83, 281, promulgated under the 1928 Act. The same provisions appear in Treasury Reg. 77, Arts. 83, 281, promulgated under the 1932 Act.

has transferred that property to his creditor in full satisfaction of his obligations.[4]

III. One other observation is pertinent. Though the divorce decree extinguishes the husband's preëxisting duty to support the wife, and though no provision of the trust agreement places such obligation on him, that agreement may nevertheless leave him with sufficient interest in or control over the trust as to make him the owner of the corpus for purposes of the federal income tax. *Helvering* v. *Clifford, supra.*

As we have seen, respondent did retain considerable control over the trusteed shares. But that was not the basis for the assessment of the deficiency by the Commissioner. It was not passed upon by the Board of Tax Appeals or the Circuit Court of Appeals. It was not included in the petition for certiorari among the errors to be urged or the reasons for granting the writ. Nor did petitioner brief or argue the point here. Hence we do not pass on the applicability of the rule of *Helvering* v. *Clifford, supra,* to these facts. Cf. *Helvering v. Wood,* 309 U. S. 344.

*Affirmed.*

Mr. Justice Reed, dissenting:

The opinion of the Court in this case is made to turn upon the question whether the law of the taxpayer's residence withdraws divorce settlements from the continuing supervision and subsequent modification of the courts. Two trusts, both irrevocable, in words precisely the same, drawn for the purpose of providing maintenance for a former wife, recognized or approved by divorce decrees identical in form, are to have different tax results upon the settlor. If income taxes are predominantly important, prospective divorcés must locate in the

---

[4] See Paul, Five Years with *Douglas* v. *Willcuts,* 53 Harv. L. Rev. 1.

states where the finality of the settlement is clearly established. Compare *Douglas* v. *Willcuts*,[1] *Helvering* v. *Fitch*[2] and *Helvering* v. *Leonard*[3] with this case. The reason given to support such a conclusion is that the liability of the settlor for taxes on trust income is based on the possibility that the settlor may be called upon for additional sums in the future. If the obligation continues, the tax liability continues. If the obligation is ended, the tax liability is ended. In *Douglas* v. *Willcuts* continued liability existed. It does not seem to me, however, that this continuing liability was the real basis for the *Douglas* decision. The basis for that decision was the prior appropriation, by the creation of the trust, of future income to meet an obligation of the taxpayer. The following excerpts from pages eight and nine show the foundation for the conclusion:

"Within the limits prescribed by the statute (and there is no suggestion that the provision here went beyond those limits) the court had full authority to make an allowance to the wife out of her husband's property and to set up a trust to give effect to that allowance."

   .     .     .     .     .

"Upon the preëxisting duty of the husband the decree placed a particular and adequate sanction, and imposed upon petitioner the obligation to devote the income in question, through the medium of the trust, to the use of his divorced wife."

   .     .     .     .     .

"The creation of a trust by the taxpayer as the channel for the application of the income to the discharge of his obligation leaves the nature of the transaction unaltered. . . . In the present case, the net income of the

[1] 296 U. S. 1.
[2] 309 U. S. 149.
[3] *Post*, p. 80.

trust fund, which was paid to the wife under the decree, stands substantially on the same footing as though he had received the income personally and had been required by the decree to make the payment directly."

The *Fitch* case was the first to rely explicitly upon the finality of the settlement. It pushed the idea to the point that the burden was upon the settlor to demonstrate the clear finality of the local settlement. This Court there refused to draw its own conclusion as to what the local law was, even though numerous state cases touched upon the subject. In *Helvering* v. *Leonard,* this Court continues to apply the finality rule. It interprets the local law and finds that while "mere property settlements . . . may not be modified" the state judicial reserve power may be exercised where "the provision in the separate agreement, approved by the decree" is for support and maintenance. We are now at the point where the taxability of the settlor depends not only on the "clear and convincing proof" of the finality of the decree but the ability to produce that proof depends upon the skill of the draftsman of the settlement. Fine distinctions are necessary in reasoning but most undesirable in a national tax system.

It is no answer to the problem to say that if the stock had been transferred outright to the wife the husband would not be liable for the tax. If the stock had been kept by the husband and dividends paid as alimony, he would have been liable.[4] Either analogy might be logically followed in the trust situation but the choice of taxability of trust income was made in *Douglas* v. *Willcuts.* That case determines the "general rule." [5]

It may be assumed that the original obligation of the husband to support a divorced wife depends upon state law and to that extent that the state law is applicable to

---

[4] *Gould* v. *Gould,* 245 U. S. 151.

[5] *Helvering* v. *Fitch,* 309 U. S. 149, 156.

the determination of liability under the federal income tax act. But that necessary reliance upon local law need be carried no farther than the determination of obligation to support. Once that is determined the applicability of the theory of constructive receipt of income to discharge the obligation would come into play and would be nationwide in extent.

The obligation to support exists prior to the divorce decree. It is ended in Nevada only upon getting the court's approval to an arrangement which permits the creation of a fund to meet from year to year the obligation from which the Nevada law then and only then releases the settlor husband.[6] It is by the court's approval that the continuing obligation is discharged. Granting that a lump sum payment would terminate both the marital and the tax liability, the creation of a trust, approved by the court, for continuous payments in lieu of alimony seems to bring the trust income much closer to alimony than to the situation of a final settlement by lump sum payment.

This is particularly true in this present case where the settlement agreement shows that the husband retained voting power over the stock placed in trust. 60,380 shares of Class A Common Stock of the Fuller Brush Company, the only class of voting stock, was placed in the trust. An equal amount was retained by the taxpayer. The aggregate was a majority of the total of voting stock outstanding. This power, retained to the settlor, is of weight in determining that the present trust is more nearly akin to an agreement to pay alimony than it is to a satisfaction of an obligation by an unrestricted transfer.

The judgment should be reversed.

---

[6] Nevada Compiled Laws, 1929, §§ 9463 and 9465.