REGINALD B. PARSONS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97908. Promulgated July 31, 1941.

*Charles T. Donworth, Esq.*, for the petitioner.
*B. H. Neblett, Esq.*, for the respondent.

1144

## OPINION.

HILL: The first issue is whether or not petitioner is taxable on the entire income of trusts A and B. Petitioner contends that these trusts were established in complete discharge of all obligations which he owed his first wife. He maintains that the Latvian laws and the trusts have given him a complete discharge from all duty to support

his first wife. Respondent argues that petitioner had a continuing obligation under the laws of Latvia to support his wife. He contends also that the trust agreements constitute continuing obligations to support petitioner's first wife. He maintains that in any event petitioner has not shown by "clear and convincing proof" that the law of Latvia gave him a complete discharge of duty to support his former wife.

It is apparent that disposition of this issue must be controlled by one of two Supreme Court cases, *Helvering* v. *Fitch*, 309 U. S. 149, or *Helvering* v. *Fuller*, 310 U. S. 69. The former case laid down the rule that the taxpayer must give clear and convincing proof that the local law and the trust instrument gave the taxpayer a complete discharge of all obligation to support his divorced wife. In the latter case the Supreme Court applied the doctrine of *Helvering* v. *Fitch*, *supra*, and held that the taxpayer had shown that local law and the trust instrument imposed no obligation upon him to support his former wife.

The local law applicable with respect to this issue is that of Latvia. The pertinent statutes are sections 41, 49, 50, 56, 60, 63, 67, and 76 of Lettlands Book of Civil Laws.[1]

---

[1] 41. The court can declare a divorce only in cases provided by law.

Note: Marriages sanctioned by Bolshevik institutions in Lettland remain in force. After the establishment of a marriage bureau at the domicile of the couple such cases of divorce must be registered anew. Proof of the legal divorce must be submitted by copy of the decree or by witnesses. In doubtful cases divorce may only be effective by order of the court.

\* \* \* \* \* \* \*

49. Couples have the right to a divorce in case cohabitation becomes intolerable. In such cases divorce may be granted independent from the guilt of the man.

In case only one party causes the intolerant conditions, only the other party has a right to sue. If both parties are at fault or neither one, each party can sue for divorce.

50. Uninterrupted separation for three years is ground for divorce.

\* \* \* \* \* \* \*

56. Parental authority over the children belongs to the one who was left with the children. Each one of the parents has the duty to support the children who have been assigned to the other parent and must contribute to their support as circumstances permit.

\* \* \* \* \* \* \*

60. After divorce the wife has the right, if without means, to demand support. The same right has the man if without means and the wife has sufficient means.

\* \* \* \* \* \* \*

The duty for support of the spouse lapses if he enters a new marriage.

\* \* \* \* \* \* \*

63. Complaints about annulment of marriage or for divorce (except those mentioned in Art. 80) and for separation are adjudicated by the civil court by procedure founded upon the general promulgations for civil process with the exception of the following:

\* \* \* \* \* \* \*

67. Demand for custody by the plaintiff of the children or the right for retaining the family name in a case for annulment, for divorce or for separation, must be part of the complaint.

Other demands, especially for alimony, are not permitted to be part either of the complaint or of the cross-complaint.

\* \* \* \* \* \* \*

76. In case the marriage has been declared as annulled, divorced or as separation of the spouses, the verdict must point out who has the custody of the children.

The decision also relates to matters under Art. 80.

In case of divorce on the ground of guilt of either or both spouses the verdict must refer to it.

The doctrine of *Helvering* v. *Fitch, supra*, imposes upon petitioner the burden of proving that both the law of Latvia and the trust instruments gave petitioner a complete discharge of the duty to support his first wife. It appears on the facts here that the obligation, if any, of petitioner to support his first wife ceased upon her remarriage within a few days after the divorce in so far as such obligation may have existed by reason of the laws of Latvia. Sec. 60, Lettlands Book of Civil Laws, *supra*. Thus, if petitioner had an obligation to support his first wife in any of the taxable years, the obligation must have arisen from contract.

The controlling agreements are trusts A and B. Each of these trusts refers to a prior property agreement and the creation of each trust discharges an obligation of petitioner to perform a duty imposed by the property agreement. The income of the trusts, however, discharges no duty of petitioner to support his first wife. The trusts themselves are irrevocable and contain no guaranty of income. The trusts, therefore, are not mere security devices for the payment of obligations. See *Helvering* v. *Leonard*, 310 U. S. 80.

Trust A does not lack substance and petitioner has no such control over its corpus which might bring it within the scope of *Helvering* v. *Clifford*, 309 U. S. 311. The fact that there is a possibility of reverter does not give petitioner such power over the trust as to make him taxable as its virtual owner. Petitioner at no time had the power to revest the corpus of trust A in himself, and section 166 of the Revenue Acts of 1934 and 1936 is therefore not applicable. Sections 167 (a) (1) and (2) of the Revenue Acts of 1934 and 1936 do not apply for the reason that no income could be accumulated for or distributed to petitioner under this trust.

Trust A, however, was created "for the benefit of [Geneva Parsons] and Reginald Stribling Parsons." The parties have stipulated that the sum of $3,750 annually may be deemed to have been devoted to the support of the son from the income of trust A. This sum was annually paid in discharge of petitioner's obligation to support his minor child and must be taxed as income of petitioner in each of the taxable years. *Helvering* v. *Schweitzer*, 296 U. S. 551. We hold that the income of trust A in excess of $3,750 in each of the taxable years is not taxable to petitioner.

Trust B differs from trust A in that under its terms petitioner's first wife receives a stipulated sum annually out of income of the trust and upon the death of the first wife the corpus was to be transferred to a trust of which petitioner was the beneficiary, or if that trust were not existent, was to revert to petitioner.

The income of this trust does not discharge a legal obligation of petitioner and can not be taxed to him under the doctrine of *Helver-*

*ing* v. *Fitch, supra.* See *Helvering* v. *Fuller, supra.* So far as the legal obligation theory is concerned, trust B stands on the same footing as trust A.

The fact that the corpus of trust B will revert to petitioner or be transferred to a trust in his favor is no reason for the application of *Helvering* v. *Clifford, supra.* This was a trust for a lifetime with a beneficiary who was no longer a member of the "intimate" family group. Petitioner exercised no control over the corpus and was not trustee. Although respondent has suggested the applicability of sections 166 and 167 of the Revenue Acts of 1934 and 1936, the facts that petitioner had no power to revest corpus of trust B at any time and that no part of the $6,000 income could be accumulated for his benefit or distributed to him are sufficient to deny application of those sections. Accordingly, we hold that petitioner is not taxable on that part of the income of trust B which was paid in the taxable years to the woman who had been petitioner's first wife.

The second issue is whether or not the sum of $1,000 a month paid to petitioner's second wife from income on certain securities deposited in escrow by petitioner is taxable to petitioner. Petitioner contends that the legal effect of the annulment of his second marriage was a judicial declaration that no marriage had ever existed and that therefore he was never under any obligation to support his second wife. He maintains that the payments under the escrow agreement were gratuitous and for that reason were not taxable to him.

Adopting, for the sake of argument, petitioner's premise that the payments were gratuitous, still we are of the opinion that they were includable in his gross income. Petitioner retained legal title to the securities and merely made an irrevocable assignment of a portion of his income. He directed the distribution of the fruit while retaining ownership of the bearing tree. The situation is not unlike that which would arise if petitioner had paid the amounts to the former wife from income on securities not in escrow. The cases of *Helvering* v. *Horst,* 311 U. S. 112; *Helvering* v. *Eubank,* 311 U. S. 122, and *Lucas* v. *Earl,* 281 U. S. 111, clearly govern this matter and require that the amounts be taxed to petitioner. We hold that the monthly payments to the second wife from the escrowed securities are taxable to petitioner.

As a further basis for our holding on this issue we note that by the contract entered into between petitioner and his second wife prior to the annulment petitioner assumed an obligation to pay her $1,000 a month. The contract is referred to in the escrow agreement and the $1,000 monthly income from the securities in escrow was clearly paid in discharge of the obligation assumed by petitioner in the agreement made prior to the annulment. Each payment of income from

the escrowed securities to the wife discharged *pro tanto* the obligation of petitioner to pay her $1,000 a month and the payments are taxable to petitioner under the general principles enunciated in *Douglas* v. *Willcuts*, 296 U. S. 1. This is true in spite of the provision in the contract made prior to the annulment which would allow petitioner to escape personal liability in the event he were in such reduced circumstances that he could no longer earn a suitable living for himself.

The final issue is whether or not capital gains realized upon sale of securities of the 1932 trust of which petitioner is the sole beneficiary are taxable to petitioner. Petitioner contends that under New York law capital gains must be added to corpus and therefore can not be taxed to him, the life beneficiary. Respondent argues that these capital gains are taxable to petitioner under section 22 (a) of the Revenue Acts of 1934 and 1936.

In his notice of deficiency respondent included the amount of the capital gains from the sale of securities of this trust in petitioner's gross income for the years 1936 and 1937. In his answer to petitioner's petition in this proceeding, respondent made claim for an additional deficiency for the year 1935 based upon the inclusion of capital gains of this trust for that year in petitioner's gross income. Petitioner's reply pleaded the statute of limitations as a bar to the increased deficiency for 1935. We hold that sections 272 (e) and 277 of the Revenue Act of 1934[2] permit respondent to request an additional deficiency and give us jurisdiction to determine such deficiency, even though asserted after the time within which the statutory period might have expired if the statute of limitations had not been suspended by section 277.

We are of the opinion that the capital gains of the 1932 trust are taxable to petitioner under section 22 (a) of the Revenue Acts of 1934 and 1936. Petitioner must be regarded as in substance the owner of the trust corpus. While it seems apparent that the trust is irrevocable, petitioner is entitled to the entire income and has the right to dispose of the corpus by will. In addition, he may direct the trustee to sell

---

[2] SEC. 272. PROCEDURE IN GENERAL.

 \* \* \* \* \* \*

(e) INCREASE OF DEFICIENCY AFTER NOTICE MAILED.—The Board shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any penalty, additional amount or addition to the tax should be assessed—if claim therefor is asserted by the Commissioner at or before the hearing or a rehearing.

SEC. 277. SUSPENSION OF RUNNING OF STATUTE.

The running of the statute of limitations provided in section 275 or 276 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under section 272 (a)) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final), and for sixty days thereafter.

or otherwise dispose of the securities comprising the corpus of the trust and cause the trustee to consult with him or his nominee before investments or reinvestments should be made. These rights are substantial and, we believe, sufficient to cause the income to be taxable to petitioner under *Helvering* v. *Clifford, supra.*

The fact that the trust is for petitioner's lifetime does not change the result. *Morton Stein,* 41 B. T. A. 994. On our theory of this issue it becomes unnecessary to consider the question of whether New York law and the trust instrument require the capital gains to be added to corpus. We hold that the capital gains of the 1932 trust are taxable to petitioner in each of the taxable years.

*Decision will be entered under Rule 50.*