OPINION. Opper, Judge-. These proceedings result from an attempt on the part of the respondent to collect an income tax upon the portion of the income of two trust funds (one of which, called the alimony fund, was set up pursuant to a decree of the Court of Common Pleas of Fayette County, Pennsylvania, dated March 5, 1915, and the other, the children’s fund, pursuant to an agreement between husband and wife and others of December 6,1906) distributed to the divorced wife of a nonresident alien. On November 1,1911, the divorced wife married Prince Victor of Thum and Taxis, of Hungary, who died in January 1918. She has for many years been a resident of Union-town, Pennsylvania. She has been receiving income from the trust funds from the date the trusts were created. For the years 1913 to 1930 the respondent determined deficiencies in income tax on the distributions against the recipient thereof, the divorced wife. She applied to the Board of Tax Appeals for a redetermination of those deficiencies. Princess Lida of Thwrn and Taxis, 37 B. T. A. 41. It was apparently conceded in that proceeding that we had no jurisdiction to redetermine deficiencies for the years 1913 to 1915. The deficiencies for 1916 to 1930 were expunged for the reason that they were received by the divorced wife as alimony or in lieu of alimony. We held that the Commissioner incorrectly found such income to be taxable to her. While the Tax Court is ordinarily concerned solely with the disposition of questions of tax liability, and while our function is generally exhausted by the announcement of a decision on that question, certain collateral phases of enforcement and collection are sometimes submitted for disposition here. The most frequent situations are those involving efforts to follow the course of property which may have been disposed of by those having the primary tax obligation, especially under the provisions imposing so-called transferee liability. The questions arising may differ from the usual problems of tax liability, rules to be applied may not be identical, and it is important at the outset of such a proceeding as this that the distinction be emphasized. For the controversy in this case deals almost exclusively with methods of the collection of a tax asserted to be due from a stranger to this proceeding. We shall assume for purposes of the present opinion, without deciding, that Fitzgerald, the father and ex-husband of the respective trust beneficiaries, and the creator of the trusts of which petitioner is trustee, was liable under our income tax law with respect to the entire income of the trusts. Douglas v. ’Willcuts, 296 U. S. 1. We shall make the further assumption that his status as a nonresident alien has no greater effect, upon his tax liability than possibly to increase the burden of conv: cing us that the law of the foreign domicile — which in this case would be a pure question of fact — is favorable to his contention that no continuing liability for the maintenance of the trust beneficiaries could be enforced, and that the burden in question has not been borne. Helvering v. Fitch, 309 U. S. 149. The question still remains whether this petitioner can be used as the medium of collection. In Docket No. 1566 that expedient is attempted by resort to the withholding provisions of the relevant revenue acts, section 143. But there is a distinction between attributing income to a taxpayer for purposes of reporting income and incurring tax liability and the determination of ownership under general rules of property law. In cases of this nature that distinction is universally recognized. It is frequently observed that tax liability may attach notwithstanding that enforceable property rights may have passed irrevocably from the taxpayer. Cf., e. g., Helvering v. Clifford, 309 U. S. 331; Helvering v. Horst, 311 U. S. 112; Higgins v. Smith, 308 U. S. 473. In order to sanction the imposition upon petitioner of a withholding obligation, it must appear that he had “the control, receipt, custody, disposal, or payment of * * * income * * * of any nonresident alien individual * * *.’[1] In this posture of the problem the Treasury must be viewed purely as any other creditor, and not as the tax-collecting agency of a democratic system, with obligations to eliminate tax evasion and other unfair discriminations between taxpayers whose situations are essentially similar. If the trust income did not belong to Fitzgerald from the standpoint of rights of property, as distinguished from concepts of income tax liability, those requirements would not be satisfied, and the requisites for enforcement and collection out of the trust would fail. “We think it clear that in a case of this kind the rights of the collector rise no higher than those of the taxpayer whose right to property is sought to be levied on.” Karno-Smith Co. v. Maloney (C. C. A., 3d Cir.), 112 Fed. (2d) 690, 692. There seems little dispute that, viewing this trust income solely as a matter of the rights conferred by property law, the beneficiaries of the trust were the wife and children, who were entitled to the income in its entirety. It is a contradiction in terms to conclude that any part of it belonged to the nonresident alien or that it was for that reason properly subject to withholding by petitioner. In our view there was consequently no interest in that income which as a matter of property right made it the proper subject for recourse in order to enforce collection of Fitzgerald’s tax, even if all of the income may have been attributable to him in determining his tax liability. The effort to apply the withholding provisions must accordingly fail. For similar reasons the same conclusion must be reached as to Docket No. 1567, in which the effort is made to hold petitioner responsible for Fitzgerald’s tax as a fiduciary under section 3467. The liability under that section is severe, more so even than that of a transferee.[2] The latter’s responsibility is limited to the value of property he has unjustly received, and the result can not be detrimental to him beyond his improperly acquired gains. But the fiduciary under section 3467 may be liable irrespective of any benefit, and conceivably notwithstanding that he has received none. The severity of these provisions imposes a corresponding obligation to apply them only in the clearest and most unmistakable reading of their precise terms. The apparent purpose and background of section 3467 is to deal with cases where a fiduciary voluntarily and in the exercise of a free option elects to satisfy other debts in preference to those due the United States. * * * But this provision is in pari materia with section 3460 * * * providing that, whenever any person indebted to the United States is insolvent or whenever the estate of any deceased debtor in the hands of a fiduciary is insufficient to pay all the debts due from the deceased, then the debts due to the United States shall be first satisfied * * *. And it creates no lien, either present or continuing. * * * It has no application to a payment by a stranger occupying no fiduciary capacity * * *. [United States v. Western Union Telegraph Co. (C. C. A. 2d Cir.), 50 Fed. (2d) 102, 103.] The import of the section implies a choice. It moreover relates the forbidden payment to the identity of the debtor, so that the debt must be “due by the person or estate for whom or for which he acts.” It accordingly appears that only if we can find that the tax was due by the trust estate or its beneficiaries, on the one hand, or that petitioner was acting in a fiduciary capacity for the nonresident taxpayer on the other, and that furthermore petitioner with an unhampered election chose to pay a debt due from the taxpayer in preference to the latter’s obligations to the United States, can the personal liability of the petitioner as a fiduciary be established. United States v. Western Union Telegraph Co., supra.[3] As we view the circumstances, these essential prerequisites are lacking. The trusts, it is true, were established by Fitzgerald. If there was a tax obligation it was his, and not that of the trusts. But in the years in question Fitzgerald was entitled to neither principal nor income and hence can not be considered the person for whom the petitioner was acting. Since the tax was not due by the estate nor by the beneficiaries, petitioner had no election to use estate property for its discharge. We are of the opinion that under the existing facts no greater liability attached to pay the tax under section 3467 than under the withholding provision. Both petitioner and respondent apply for dismissal of the proceeding at Docket No. 1565, though for different reasons. Since the parties are in accord as to this procedure, the proceeding will be disposed of by the entry of an order of dismissal without the expression of any other grounds. It is not apparent that any useful purpose will be served by extended discussion of a subject which, if not moot, can be dealt with when it arises in the future more adequately than upon the present record. Reviewed by the Court. Decisions will he entered for petitioner, except in Docket No. 1565, which is dismissed. Tyson, J., concurs only in the result. SEC. 143. WITHHOLDING OF TAX AT SOURCE. [[Image here]] (b) Nonresident Aliens. — All persons, in whatever capacity acting, including lessees or mortgagors of real or personal property, fiduciaries, employers, and all officers and employees of the United States, having the control, receipt, custody, disposal, or payment of interest * * * dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income * * * of any nonresident alien individual * *. * shall * * * deduct and withhold from such annual or periodical gains, profits, and income a tax equal to * * * [the figure varies in the several acts] per centum thereof. * * * (c) Return and Payment. — Every person required to deduct and withhold any tax under this section shall make return thereof on or before March 15 of each year and shall on or before June 15, in lieu of the time prescribed in section 56, pay the tax to the official of the United States Government authorized to receive it. Every such person is hereby made liable for such tax and is hereby indemnified against the claims and demands of any person for the amount of any payments made in accordance with the provisions of this section. Section 3467— “Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.” The authority of this case with respect to the enforcement of lienB for the collection of taxes has been radically diminished if not destroyed by subsequent cases. See, e. g., United States v. Long Island Drug Co. (C. C. A., 2d Cir.), 115 Fed. (2d) 983, and, particularly, United States v. Warren R. Co., 127 Fed. (2d) 134. But we do not read those decisions as weakening the force of the rule applying to section 3467.