**LIEBMANN v. HASSETT, Collector of Internal Revenue.**

**HASSETT, Collector of Internal Revenue, v. LIEBMANN.**

Nos. 4035, 4036.

Circuit Court of Appeals, First Circuit.

March 7, 1945.

Rehearing Denied April 16, 1945.

Lee M. Friedman, of Boston, Mass. (Paul D. Turner and Friedman, Atherton,

248

King & Turner, all of Boston, Mass., of counsel), for Liebmann, executrix.

Melva M. Graney, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., and Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., for Hassett, Collector.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

The question in this case is whether the proceeds of certain life insurance policies should be included in the gross estate of the decedent for federal estate tax purposes under sections 302(a) (c) (g) and (h) of the Revenue Act of 1926, as amended by section 404 of the Revenue Act of 1934, Ch. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, pages 227, 231.

Harry Liebmann died on October 3, 1937. His wife (hereinafter called the taxpayer) was named executrix and duly filed an estate tax return which did not include in the gross estate the proceeds of eight insurance policies on the decedent's life. The statutory exemption of $40,000 was claimed as to three of the policies aggregating in value $22,383.31 and they present no issue in the present proceeding. After allowing the balance of the exemption, the Commissioner included the remaining five policies in the gross estate and assessed a deficiency of $11,150.04. The taxpayer paid this tax together with interest in the amount of $1,358.16, filed a claim for refund which was disallowed, and then brought this action in the District Court.

The policies were designated in the opinion of the court below as Policies A, B, C, D and E. Policies A and B were issued by the New England Mutual Life Insurance Company in 1925. They were identical in form and upon the decedent's death were payable to his wife, her executors, administrators and assigns. The decedent did not reserve the power to change the beneficiary. In 1932, at the request of Mrs. Liebmann, the policies were made payable to her if she survived the decedent, otherwise to her daughter if she survived him, and if neither of them survived the decedent to his estate. All premiums were paid by the decedent up to the time of his death.

Policies C and D were issued by the Provident Life and Trust Company of Philadelphia and the Equitable Life Assurance Society of the United States in 1914 and 1898 respectively. Both policies were made payable to the decedent's wife if living, and otherwise to his own estate. The decedent reserved no power to change the beneficiary.

Policy E of $50,000 was issued by the Northwestern Mutual Life Insurance Company in 1916, payable to the decedent's wife with the right to change the beneficiary reserved. In 1935 the decedent assigned this policy to his wife "in consideration of love and affection", and Mrs. Liebmann paid the two premiums that fell due subsequent to the assignment and prior to the decedent's death. In 1935 the decedent filed a gift tax return, reporting the value of this policy at the time of the assignment to be $23,985.91 (proper adjusted value $24,549.60).

The District Court held that the proceeds of Policies A and B issued in 1925 were includible in the gross estate as there was a possibility that the proceeds might revert to the decedent; that although there was a possibility of reverter in Policies C and D issued in 1914 and 1898 respectively, the proceeds of these policies were not includible because they had been issued prior to the effective date of the Revenue Act of 1918; and that Policy E issued in 1916 was includible as a transfer made in contemplation of death at its value at the time of death less that portion which Mrs. Liebmann's two premium payments bore to the total amount paid for the policy, or $4670.

The taxpayer contends that there was no possibility of reverter under Policies A and B and that therefore the proceeds of these policies are not includible, but that if we should find a possibility of reverter only the value of the possibility is includible. She further contends as regards Policy E that the proper value to be included is the cash surrender value of the policy at the time of the assignment or $24,549.60. The Commissioner, on the other hand, contends that the mere fact that Policies C and D were issued before 1918 does not make the proceeds of these policies non-includible under § 302(g) and (h).

Policies A and B each provided for cash loans and carried a paid-up endow-

ment provision.[1] After the second annual premium the insured had an option as to the application of dividends under which he elected to have them applied to the reduction of premiums. In the event of default in the payment of premiums he could elect to take paid-up insurance, or, with the consent of the beneficiary, he could surrender the policy for its cash value, or, all interested parties agreeing, he could have the policy continued as extended insurance. It also appears that the policies carried an option by which "upon the written request of all the parties in interest" they could be exchanged for other insurance.

█ Section 302 of the Revenue Act of 1926 provides that:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * *

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

Under the express terms of these policies the insured after the first three years was in a position to obtain the cash surrender value and the cancellation of the policies whenever he might choose to do

so. He could surrender the policies for loans without the consent of the beneficiary, and the pertinent provisions of the instruments provide for the voiding of the policies whenever such loans should equal the cash surrender value and not be repaid thirty-one days after notice is given to the insured. Article 27 of Treasury Regulations 80 defines legal incidents of ownership as including "the right of the insured or his estate to the economic benefits, the power * * * to surrender or cancel the policy * * * to pledge it for a loan, or to obtain from the insurer a loan against the cash surrender value of the policy. * * *"

The decedent retained all of these powers. The proceeds of policies A and B are therefore clearly taxable. Chase National Bank v. United States, 278 U.S. 327, 335, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388.

█ Nor do we agree with the taxpayer's contention that the 1932 change in beneficiaries created no taxable interest in the decedent for the reason that the 1932 change gave him no possibility of reverter. Conceding that the decedent's interest is not technically a possibility of reverter it remains nevertheless that the change in the beneficiaries provided for payment of the proceeds of the policies to the decedent's estate in the event that his wife and daughter should predecease him. Cf. Helvering v. Hallock, 309 U.S. 106,

---

[1] "Cash Loans.—At any time after three full annual premiums have been paid on this Policy, the Holder hereof, upon its assignment to the Company, shall be entitled to a loan from the Company, on the sole security hereof, at six per cent interest, of a sum which, with interest thereon to the end of the policy year during which the application for the loan is made, shall be equal to, or, at the option of the Holder, less than, the cash value of the Policy and of all dividend additions hereto at the end of said year, less any indebtedness to the Company hereon, and less any unpaid portion of the premium for said policy year. The Company may, at its option, defer the granting of such loan, other than to pay premiums on policies in the Company, for a period not exceeding ninety days from the date of the application therefor. The whole or any part of such loan may be repaid at any time. Failure to repay the loan, or to pay the interest thereon when due, shall

not avoid the Policy while the total indebtedness hereon is less than the cash value. When such indebtedness, including interest, shall equal or exceed the cash value, the Policy shall become void thirty-one days after notice shall have been mailed by the Company to the last known address of the Insured and of the Assignee, if any, of record with the Company."

"Paid-up or Endowment Provision.— When the cash value of the Policy and additions, if any, together with any shares of surplus held at interest, shall equal the reserve of a paid-up Policy of the same form and amount at the then attained age of the Insured, the Company will, upon due request, endorse this Policy as fully paid-up; or when such aggregate amount, less any indebtedness hereon, shall equal the face amount of this Policy, the Company, upon due request and release, will pay such amount as an Endowment."

111, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, on the rejection of the formal distinctions drawn in the law of real property as irrelevant criteria in the field of taxation, and the recognition that the crucial taxable transfer is the transfer of economic interests and not the technical conveyance of title. It is clear that the death of the decedent was indispensable to the termination of his interest in the insurance, thus "satisfying the terms of the taxing act and justifying the tax imposed." Cf. Klein v. United States, 283 U.S. 231, 234, 51 S.Ct. 398, 399, 75 L.Ed. 996.

■ The taxpayer submits, however, that the 1932 change in beneficiaries was without effect, contending that the policy gave her no such right as by its terms the right to change beneficiaries had been eliminated. It appears on the record that the beneficiary requested the change, that the insurance company made it by endorsement on the policies, and that the only thing lacking was a showing of the decedent's assent. The trial court properly assumed that he did assent to the change. American Railway Express Company v. Lindenburg, 260 U.S. 584, 589, 43 S.Ct. 206, 67 L.Ed. 414; Knox County v. Ninth National Bank, 147 U.S. 91, 97, 13 S.Ct. 267, 37 L.Ed. 93. In a tax case where the taxpayer has the burden of proof "mere inferences and vague conjectures" are not enough. Cf. Helvering v. Fitch, 309 U.S. 149, 156, 60 S.Ct. 427, 84 L.Ed. 665.

■ The taxpayer's second point that only the value of the possibility of reverter is includible for tax purposes is without merit in face of the clear language of § 302(g) expressly providing that the value of the gross estate shall be determined by including the value of the amount receivable by beneficiaries where the $40,000 exemption has been deducted. The measure of the tax is the value of the insurance policies at the decedent's death. In Commissioner of Internal Revenue v. Washer, 6 Cir., 1942, 127 F.2d 446, certiorari denied 317 U.S. 653, 63 S.Ct. 49, 87 L.Ed. 525, the court expressly included all the proceeds of a policy and not merely the value of a possibility of reverter. Cf. Fidelity-Philadelphia Trust Co. v. Rothensies, 323 U.S. ——, 65 S.Ct. 508, and Commissioner of Internal Revenue v. Field's Estate, 323 U.S. ——, 65 S.

Ct. 511, both decided by the Supreme Court on February 5, 1945; Helvering v. Hallock, supra; Lang v. Commissioner of Internal Revenue, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319; Chase National Bank v. United States, supra; Porter v. Commissioner, 288 U.S. 436, 443, 53 S.Ct. 451, 77 L.Ed. 880.

■ With respect to Policies C and D, the lower court decided that they were not includible because they were issued prior to the Revenue Act of 1918, 40 Stat. 1096 and relied upon Lewellyn v. Frick, 268 U.S. 238, 45 S.Ct. 487, 69 L.Ed. 934, as reaffirmed in Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160. When the decision below was rendered that court did not have the opinion of this court in Bodell v. Commissioner of Internal Revenue, 1 Cir., 1944, 138 F.2d 553, certiorari denied 321 U.S. 778, 64 S.Ct. 619, before it as our opinion had not at the time been issued. In that case we reviewed the decisions in Lewellyn v. Frick, supra; Bingham v. United States, supra; and Industrial Trust Co. v. United States, 296 U.S. 220, 56 S.Ct. 182, 80 L. Ed. 191, and concluded that "the Supreme Court has indicated by Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, and United States v. Jacobs, 1939, 306 U.S. 363, 59 S. Ct. 551, 83 L.Ed. 763, that the Bingham case is no longer to be followed". [138 F.2d 556] The decision of the Board of Tax Appeals holding that the proceeds of two insurance policies were includible though issued prior to 1918 was affirmed. As to one of the policies involved in the Bodell case, supra, we placed our decision for inclusion squarely on the ground that the decedent retained a possibility of reverter.

■ With respect to Policy E, the taxpayer accepts the finding of the court below that the policy was assigned by the decedent to his wife in contemplation of death and is taxable under § 302(c) of the Act. The only question she raises here relating to Policy E is the proper valuation of the policy for tax purposes. The taxpayer contends that the amount includible in the decedent's gross estate is the cash surrender value, or $24,549.60, at the time of the assignment, and not the full $50,000, the value of the policy at the decedent's death, less that portion which

Mrs. Liebmann's two premium payments bear to the total cost of the policy. Her reliance upon Bailey v. United States, 30 F.Supp. 184, 89 Ct.Cl. 364, is misplaced as the case is not in point. The question raised in that case was one of taxability under § 302(g), whereas, before this court the taxpayer has conceded the taxability point and has raised only the question of proper valuation under § 302(c). In the Bailey case, supra, there was no assignment of an insurance policy in contemplation of death. Instead there was an unconditional assignment of the policy in question and the premiums subsequent to the unconditional assignment had been paid by the beneficiary, and the court held merely that the proceeds of such a policy were not taxable under § 302(g).

The provisions of § 302(c) of the Act provide for the inclusion in a decedent's gross estate of "the value at the time of his death" of property—

"To the extent of any interest therein of which the decedent has at any time made a transfer, * * * in contemplation of * * * his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

It is clear that the language of this statute requires the value of the decedent's property interest to be determined at the date of his death and that the value at the time of assignment has nothing to do with the matter of valuation for tax purposes. In Heiner v. Donnan, 285 U.S. 312, 330, 52 S.Ct. 358, 362, 76 L.Ed. 772, the Supreme Court said in regard to similar statutory language:

"The tax is imposed upon the transfer of the net estate, but it is first necessary to ascertain the value of the gross estate, and the statute provides that this is to be determined by including, * * * the value of any interest in property of which the decedent has at any time made a transfer in contemplation of his death. The statute requires that this value shall be determined as of the time of the decedent's death, without regard to the value of the gift when received."

And see Milliken v. United States, 283 U.S. 15, 16, 22, 51 S.Ct. 324, 75 L.Ed. 809. As pointed out in Igelheart v. Commissioner, 5 Cir., 77 F.2d 704, 711, such property transferred in contemplation of death for tax purposes "is in the same category as it would have been if the transfer had not been made and the transferred property had continued to be owned by the decedent up to the time of his death." Cf. Snyder v. Helvering, 63 App.D.C. 59, 69 F.2d 377; Schoenheit v. Lucas, 4 Cir., 44 F.2d 476.

We agree with the District Court that the proportionate part of the insurance purchased by the last two premiums paid by Mrs. Liebmann should be excluded from the gross estate. As Paul points out, "The possible hardship which might result from a tax upon the full proceeds if the transferee pays subsequent premiums is obvious. In such a situation the insured has made no completed transfer of an amount equivalent to the face amount of the policy * * *. It would seem inconsistent to hold that the insured could transfer in contemplation of death any greater portion of the asset than he is regarded as having 'taken out' under subdivision (g)." I Paul, Federal Estate and Gift Taxation (1942), p. 651, footnote 9. This is consistent with Treasury Regulations 80, Article 15, which provides that:

"If a portion only of the property was so transferred as to come within the terms of the statute, only a corresponding proportion of the value of the property should be included in ascertaining the value of the gross estate. If the transferee has made additions to the property, or betterments, the enhanced value of the property due thereto should not be included."

The judgment of the District Court with respect to Policies A, B and E is affirmed, and with respect to Policies C and D it is reversed. The case is remanded to that court for further proceedings in conformity with this opinion.