WALTER L. FERRIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

VIOLET COOPER FERRIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 108291, 108292.   Promulgated April 21, 1943.

*George G. Witter, Esq.*, for the petitioners.
*Byron M. Coon, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* The facts of this case bring it squarely within the decision of the Ninth Circuit Court of Appeals in *Ingraham* v. *Commissioner*, 119 Fed. (2d) 223. It was there held that under Connecticut law a husband is discharged of the duty to support his wife by a final decree of divorce which makes no provision respecting alimony, and consequently he is not to be taxed upon income of a trust used for the wife's support. *Helvering* v. *Fuller*, 310 U. S. 69. The Court, however, recognized the husband's continuing obligation to support and educate minor children and ruled that the father was taxable upon trust income to the extent it was used to satisfy that liability.

The income of the trust in the present case for the current tax year was $7,818.72. Twenty percent of this sum, or $1,563.74, was distributable to petitioner. This latter amount is taxable to him, whether distributed or not. Revenue Act of 1938, sec. 162 (b). In addition, the sum of $1,200 was expended for the support and education of petitioner's minor son; and, inasmuch as petitioner's legal obligation was thereby discharged, he is taxable on this amount under section 22 (a). *Douglas* v. *Willcuts*, 296 U. S. 1. There is no basis in the record for concluding that the $1,200 used for the son or any part of it was paid out of the $1,563.74 which petitioner was entitled to receive but which he left in the trust. Hence, both of these sums are taxable to petitioner.

We do not know what was done with the balance of $5,054.98 of trust income. It was distributable to the divorced wife by the terms of the trust instrument and presumably was used for her own purposes or for the other three children, who in the tax year were adults. At any rate it was not used to discharge any of petitioner's

legal obligations. We do know that it was not received by petitioner nor was it used for the support or education of his minor child.

In order to tax petitioner upon this $5,054.98 of income which he did not receive, directly or indirectly, we must be able to point to some provision of the Revenue Act of 1938 justifying such action. Income of a trust, though not received by a grantor, may be taxed to him under section 22 (a) if he has reserved the equivalent of full ownership and control of the corpus. *Helvering* v. *Clifford*, 309 U. S. 331. It is not contended that such a situation obtains here, and obviously it does not. Section 22 (a) may also be invoked to tax to a grantor income actually used to pay his debts, for that section authorizes "the laying of the tax against the one who through the discharge of his obligation enjoys the benefit of the income as though he had personally received it." *Douglas* v. *Willcuts, supra*. This principle, of course, requires that petitioner be taxed upon the $1,200 expended on his son; but it would be extending the scope of section 22 (a) and *Douglas* v. *Willcuts* beyond any limits suggested by decided cases to hold that section 22 (a) taxes income to an obligor solely on the ground that it may have been used to pay his obligations, where in fact it is used for other purposes that do not benefit the obligor taxwise. Such a theory, if valid, would be akin to the sparingly applied doctrine of constructive receipt, and would presuppose the existence not only of a debt or obligation, but of an untrammeled discretion on the part of the debtor to have the debt or obligation satisfied with the income in question—a right so absolute that it could be said he had turned his back upon funds that were his for the asking. The $5,054.98 of income in controversy here could not be taxed to petitioner under section 22 (a) upon any such theory. This amount was payable to his divorced wife, along with the $1,200 which she expended on the minor child, and the extent that she would devote trust income to the child's support was a question to be determined by her in the first instance. It is true, perhaps, that the wife's determination was not final, because petitioner retained a protective right of reimbursement, in the nature of a veto power, in the event she expended an insufficient amount on the child and petitioner was obliged to make up the deficiency. Such a right to reimbursement, however, was not present as the facts existed in the tax year, and therefore it could not be said that petitioner had voluntarily forsaken an amount of $5,054.98 that was unconditionally available to him. We think it follows that he is taxable under section 22 (a) only upon the sum of $1,200.

No contention is made that section 166 applies by virtue of a power to revest corpus in petitioner, and we are therefore left to consider only section 167. The first paragraph of that section, dealing with income that is or may be accumulated, is inapposite, for the entire

income of the present trust was currently distributable. Subsection (2) of section 167 (a) reads as follows:

SEC. 167.   INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

\*         \*         \*         \*         \*         \*         \*

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor;

\*         \*         \*         \*         \*         \*         \*

then such part of the income of the trust shall be included in computing the net income of the grantor.

While the section speaks only of distributions that may be made to the grantor, the Supreme Court has recently held, and upon this case the Commissioner on brief places his entire reliance, that it also covers income that may be distributed in discharge of the grantor's legal obligations. *Helvering* v. *Stuart*, 317 U. S. 154. In other words the Court superimposed upon the language of section 167 (a) (2) the doctrine of *Douglas* v. *Willcuts*, *supra*. Since payment of a debt is the equivalent of actual receipt of the income by the debtor, income which "may" be paid on a grantor's indebtedness is to be regarded as the equivalent of income which "may" be paid to the grantor himself within the meaning of 167 (a) (2).

It is essential, however, in considering section 167 (a) (2) that its limitation be kept in mind. That limitation is that the discretion to distribute to the grantor or in discharge of his obligations must be vested in the grantor or in a person "not having a substantial adverse interest in the disposition of such part of the income." The Supreme Court was careful to point out this limitation, saying:

Among these involved problems of statutory construction, we observe the time-tried admonition of restricting the scope of our decision to the circumstances before us. We are not here appraising the application of Section 167 to cases where a wife is the trustee or beneficiary of the funds which may be used for the family benefit. \* \* \* We are dealing with a trust for minors where the trustees, *without any interest adverse to the grantor*, have authority to devote so much of the net income as "to them shall seem advisable" to the "education, support and maintenance" of the minor. [Italics added.]

The query in the case at bar, therefore, is whether or not the $5,054.98 of income in question could have been used to discharge petitioner's obligation to his minor son in the discretion of petitioner or of a person not having a substantial adverse interest in such disposition of the income. In the *Stuart* case adversity of interest raised no real question, for the discretion to distribute income or accumulate it for the minor's future benefit was lodged in the trustees. The trustees were the grantor, his wife, and his brother, none of whom had any

possible beneficial interest in the trust. Here, strictly speaking, there was no discretion lodged in anyone by the terms of the trust instrument. The income was distributable to the wife "in substantially equal monthly payments." The only exception to this was in the event petitioner should be obliged to pay any obligations incurred by the wife or the children. And even if this occurred there was no discretion placed in the trustee, for the instrument provides that in that event "the trustee shall pay to said Walter L. Ferris" the amount of obligations so paid by him.

We can not escape the conclusion that under such circumstances it was the duty and privilege of the wife, as a practical matter, to determine how much of the income she would use for her own support and how much would be devoted to the minor child. The son was sent to college in the tax year and $1,200 of the income received by the wife was used to meet his expenses. This was all that was expended for the son's support and education, and the $1,200 so expended was trust income. The petitioner had absolutely no discretion to apply more of the trust income to the welfare of the child. During the tax year petitioner was not required to pay from his own funds debts incurred by or in behalf of the minor for his necessaries. So long as this situation prevailed petitioner had no right to any of the income or to direct that more of it be used for the child, and the wife had a right to retain what she did. She was the beneficiary entitled to retain the income that was not used for the support and education of the children, and certainly no authority need be cited for the proposition that a person entitled to retain income has an interest therein adverse to giving it to another. Petitioner's right of reimbursement gave him no discretion, and the wife, with a very real and adverse interest, might well ignore any request made by him that additional funds be paid for the benefit of the child. Unless and until petitioner should be obliged to pay debts incurred in behalf of the child, he had nothing to say concerning the wife's disposition of the income.

The Commissioner, however, argues that there was a possibility that all of the trust income may have been necessary to adequately support the minor child. His brief reads in part:

Looking at the trust instrument as a whole there can be no doubt but that the minor child would have had a claim for trust income to an extent which was necessary to properly educate, maintain and support him which would have been superior to any claim of the children who had reached their majority. Suppose there had been only $1,200.00 income in 1938. The trustee could have, in its discretion, used it all for the support and maintenance of the minor son, Jeffrey Ferris. That such a situation could arise was not improbable and certainly there was always present a possibility that all of the trust income would be used for the support, maintenance and education of children of the petitioners.

That possibility of use always existed which, under the decision of the Supreme Court in the *Stuart* case, supra, is all that is required to make it all taxable to the petitioner.

We have heretofore noted, however, contrary to respondent's suggestion, that the trustee had no discretion in the matter. Furthermore, we are not here concerned with a situation where the income amounted to only $1,200. If it did, and all of it was used for the minor, the answer would be simple. But here the income was $7,818.72; and $1,200, and only that sum, was expended on the son. We do not understand that respondent is contending that $1,200 was inadequate to properly maintain the son during the tax year. There is no argument made that because of the father's financial ability a reasonable amount to be expended for a child in the circumstances exceeded the amount that was actually disbursed. Nor does respondent suggest that decision must go against petitioner for failure to prove the negative.

There has been no suggestion from anyone in this case that the son was inadequately supported on $1,200. Consequently, we would not feel warranted in deciding this case against petitioner for failure to sustain a burden of proof.

Moreover, in our opinion, an argument that $1,200 was inadequate to properly support the child during the tax year, if presented, would be entirely beside the point. The question we have to decide under section 167 is whether the mother had a substantial adverse interest in the controverted income. The fact of inadequacy of the amount used would have no bearing whatever upon that question. What would it matter if petitioner himself had thought, and even testified, that the mother had treated their son with niggardliness? This would only serve to emphasize the mother's adverse interest in the income which she preferred to retain for herself. It is perhaps conceivable that a court, upon application of the child, may have ordered the wife to use a greater sum for his support or education; but that possibility does not remove the wife's adverse interest in the $5,054.98 of income that is the subject of the present dispute.

It is to be emphasized that the instant case is one which the Supreme Court expressly declared it was not deciding in the *Stuart* case, *supra*. Since, for the foregoing reasons, the wife in the case at bar had a substantial adverse interest, we are of opinion that section 167 and the *Stuart* case do not apply.

We conclude that $5,054.98 of the trust income is not taxable to petitioner. *Ingraham* v. *Commissioner*, *supra*; *Helvering* v. *Fuller*, *supra*.

Petitioner and his present wife each deducted $866.67 as business expenses, $395.37 as losses, and $170 as a bad debt. These amounts were

disallowed. The parties have stipulated that the community is entitled to deductions of $578.02 on account of business expenses and of $340 for a bad debt. The loss deductions are waived. Effect will be given to these stipulations in the recomputation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DISNEY, *J.*, dissenting: I am unable to agree with the majority opinion. My analysis of the pertinent language of the trust indenture convinces me that Alice Cheney Ferris did not possess the discretion upon which the majority opinion relies to give her an adverse interest. Though it is provided that it was the intent that she should use the trust income for the support and maintenance of herself and children, she was required to save Walter L. Ferris harmless from any obligation for the support of any of them and if she should fail to do so, trustee was required to pay from trust income and to Walter L. Ferris the amount of any obligations which he should be obliged to pay, including those incurred by the children. This in turn includes the minor child. In other words, the trustee had the duty first of all, it seems to me, to see that Walter L. Ferris was saved harmless from any obligation for the support of the children, including the minor child and including any obligations which such minor child might incur. Such obligations, of course, to be binding upon the parent-settlor would have to be those reasonably necessary considering the means and station in life of the parent. The record does not indicate such station in life nor the financial ability of the trustor. The trust income for the taxable year other than 20 percent payable to the petitioner was $6,254.98. In my opinion, under *Douglas* v. *Willcuts*, 296 U. S. 1, and *Helvering* v. *Stuart*, 317 U. S. 154, the entire trust income was taxable to petitioner, in the absence of any showing that his financial position and station in life would not have rendered him liable had the minor child incurred obligations which would have bound him in amounts equal to such trust income. The *Stuart* case indicates to me that we must consider not merely the amount actually used for the support of the minor child, but any amount which under the trust indenture might have been used for that purpose from trust income, and, observing from the language of the indenture that such trust income was to save the settlor harmless from obligation to support and maintain, among others, a minor child, it appears to me that the trust income, so far as we know from this record, was all subject to such call and therefore taxable to the settlor.

STERNHAGEN, HARRON, and OPPER, *JJ.*, agree with this dissent.