*Decision will be entered under Rule 50.*

Max E. Friedmann, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 110471. Promulgated January 31, 1944.

190

*Leon E. Kaumheimer, Esq.,* and *Frederic Sammond, Esq.,* for the petitioner.

*Charles Munz, Esq.,* for the respondent.

OPINION.

BLACK, *Judge*: Petitioner seeks the redetermination of deficiencies in income tax determined against him by the respondent for the calendar years 1935, 1936, and 1937 in the amounts of $3,097.85, $5,402.82, and $6,798.82, respectively.

In a statement attached to the deficiency notice the respondent adjusted petitioner's net income as disclosed by his return for each of the taxable years 1935, 1936 and 1937 by adding thereto the respective amounts of $16,311.00, $16.609.07, and $16.952.25, which he labeled "Income from trust" and explained as follows:

> It is held that the income from the trust created by you under date of January 7, 1935, in connection with a divorce, in lieu of alimony and to provide for the care and maintenance of minor children, is taxable to you within the purview of Sections 22(a), 162(b) and 167 of the Revenue Acts of 1934 and 1936.

Petitioner concedes that $3,550 of each of the above amounts added to his net income is taxable to him by reason of its use for the support, maintenance, and education of his minor children, but by appropriate assignments of error he contests the correctness of adding the balance of the above amounts to his net income for each of years involved.

For the years 1935 and 1936 the respondent also made other adjustments to petitioner's net income which are not contested by petitioner.

For the year 1937 the respondent also adjusted petitioner's net income as disclosed by his return by adding thereto the amount of

$330.07, which he labeled "Disallowance of personal expenses." By an appropriate assignment of error petitioner contested this disallowance to the extent of $102.57, and respondent now concedes that he erred to that extent. Effect will be given to this concession under Rule 50.

The facts were stipulated. We adopt the stipulation and the exhibits thereto as our findings of fact and will summarize herein only those facts which we deem necessary to decide the remaining question of whether the respondent erred in adding to petitioner's net income for each of the taxable years 1935. 1936, and 1937 that portion of the above mentioned trust income for each year which was in excess of $3,550.

Petitioner is an individual and resides at Milwaukee, Wisconsin. The returns for the taxable years here involved were filed with the collector for the district of Wisconsin.

Prior to December 8, 1934, petitioner and Freda J. Friedmann were husband and wife, having their residence and domicile in the State of Wisconsin. There were two issue of the marriage, namely Freda Katerina Friedmann, born December 13, 1929, and Maxine Alberta Friedmann, born November 1, 1932.

On December 8, 1934, Freda J. Friedmann commenced an action in the County Court of Waukesha County, State of Wisconsin, against petitioner for a divorce from the bonds of matrimony. On January 3, 1935, petitioner, as defendant. and Freda J. Friedmann, as plaintiff, entered into a stipulation in writing which provided in part:

Now, THEREFORE, pursuant to the provisions of section 247.10 of the Wisconsin Statutes of 1933, and as a complete, final and permanent division and distribution of the estate, real and personal, of the defendant, it is hereby stipulated and agreed by and between the plaintiff and the defendant in the above entitled action, subject, however, to the approval of the County Court of Waukesha County and the divorce counsel of said county, that the judgment in said action shall provide: * * *

Among these provisions it was provided that the plaintiff was to have custody of the two minor daughters; that certain real and personal property was to belong to plaintiff and certain other real and personal property was to belong to defendant, that the defendant should transfer and deliver in trust to the Marine National Exchange Bank of Milwaukee. as trustee, 1,578 shares of class B 7 percent preferred stock and 672 shares of class C 7 percent preferred stock of Ed. Schuster & Co., in accordance with the terms and conditions of a certain trust agreement to be entered into; that the defendant should also transfer and deliver in trust to the trustee $25,000; that the defendant should pay plaintiff $5,500 to be used in furnishing a suitable home for the plaintiff and daughters; that the defendant should also transfer and deliver in trust to the trustee a life insurance policy in the

face amount of $100,000; that defendant was to pay plaintiff's counsel $5,000 in full as their fees; that the provisions for the plaintiff and daughters "are in lieu of all alimony and of any other provision for the support of said children"; that "said division and distribution of the estate, real and personal, of the defendant shall be final and permanent"; and that the plaintiff "hereby agrees to hold harmless and indemnify the defendant against any and all claims arising by virtue of plaintiff's failure to support or educate said daughters."

The above mentioned stipulation signed by petitioner and his wife was approved by the divorce counsel of Waukesha County on January 5, 1935.

In the action of divorce findings of fact and conclusions of law were signed and filed by the County Court of Waukesha County on January 7, 1935. These contained the following:

Sixth: That under and pursuant to the provisions of Section 247.10 of the Wisconsin Statutes the parties have, subject to the approval of the Court and the Divorce Counsel of this county, stipulated for a complete and final division of the estate and the property of the parties and an allowance for the support, maintenance and education of the minor daughters of the parties hereto, and D. B. Malone, Divorce Counsel of Waukesha County having examined the said stipulation and stated in open court that the same is fair and that such property settlement so stipulated is for the best interests of the minor children of the parties to this action, and having recommended to the Court that the said property stipulation and the whole thereof, be approved by this Court.

The fourth paragraph of the conclusions of law mentioned above was as follows:

Fourth: That a complete and final division of the property and estate of the parties and provision for the support of the minor children of the parties has heretofore been agreed to pursuant to a stipulation, which stipulation for a complete and final division of such property and estate and stipulation for the support of the minor children of the parties is in all respects approved and such division shall be in lieu of all alimony and of other provision for support.

On January 7, 1935, a judgment of divorce was entered by the County Court. This judgment concluded with the following provisions:

It Is Further Ordered, Adjudged and Decreed that the stipulation of the parties hereto of a division of the estate and for the support of the minor children of the parties, such stipulation and trust indenture relating to such division of property and embodying the terms thereof attached hereto, be and the same is hereby in all respects approved.

It Is Further Ordered, Adjudged and Decreed that the parties hereto pay, transfer and set over to the parties entitled thereto in accordance with such attached stipulation and trust indenture, the money, property and effects therein stipulated to be so transferred and set over.

It Is Further Ordered, Adjudged and Decreed that the provisions for the plaintiff and said daughters, minor children of the parties hereto, as set forth in the stipulation and trust indenture attached hereto, are in lieu of all alimony and other provisions for the support of the children of the parties hereto and that

said division and distribution of the estate, real and personal, of the defendant, shall be final and permanent as soon as the parties hereto shall have paid, transferred and set over the money, properties and effects to the persons entitled thereto in accordance with the terms of such stipulation.

On or about January 7, 1935, pursuant to the stipulation and the judgment in said divorce action, petitioner conveyed to his divorced wife a certain residence located in Juddville, Wisconsin, and paid to her the sum of $5,500 in cash. There was conveyed to petitioner by his divorced wife all of her right, title, and interest in and to a certain residence located in the County of Milwaukee, State of Wisconsin.

On January 7, 1935, pursuant to the Friedmann stipulation and the judgment of divorce, petitioner and the Marine National Exchange Bank of Milwaukee executed a trust agreement, and petitioner transferred to the bank, as trustee, all of the property which in the Friedmann stipulation of January 3, 1935, he had agreed to place in trust.

Ed. Schuster & Co. is a Wisconsin corporation located and engaged in the business of operating retail department stores in Milwaukee. On January 7, 1935, the corporation had outstanding 12,000 shares of class B preferred stock and 5,400 shares of class C preferred stock. The book value of the net assets of the corporation as of January 31, 1935, was equivalent to $309.46 per share of class B and class C preferred stock then outstanding. At all times since the issuance of the class B and class C preferred stock, all dividends upon both classes of stock have been paid by the corporation as they accrued. The aggregate annual net profits carried to earned surplus during the corporation's fiscal years ended January 31, 1923, to January 31, 1935, both inclusive, was in excess of two and three-fourths times the aggregate amount of dividends payable on the class B and class C preferred stock during that period. The amounts thereof paid to the trustee under the trust agreement, dated January 7, 1935, have exceeded $10,000 in each of the years since the execution of the trust agreement, and no part of the preferred stock has been called or redeemed by Ed. Schuster & Co. On January 7, 1935, the corporation also had outstanding 46,620 shares of common stock. Petitioner was the holder of a substantial amount of the common stock and was the president and a director of the corporation. Ralph T. Friedmann, brother of petitioner, was the vice president, treasurer, and a director of the corporation. On January 7, 1935, petitioner, his brother Ralph, his mother, Johanna B. Friedmann, and trusts for the benefit of said persons or their children held 40,994 shares of the common stock of the corporation, amounting to 87.93 percent of the then outstanding common stock.

Article I of the above mentioned trust agreement executed on January 7, 1935, provided that the trustee should collect the income of the property held in trust and after deducting commissions and

administration expenses "shall pay and apply, as hereinafter provided." the remaining net income in monthly installments of substantially equal amount.

Article II (A) provided that the trustee should pay such income to Freda J. Friedmann for life "provided, however, that the Trustee shall first be satisfied that said Freda J. Friedmann has at such time suitably provided for the upkeep, maintenance and education" of the minor daughters, and "If the Trustee shall determine that said Freda J. Friedmann has not applied sufficient of such income for the support, maintenance and education of said daughters, the Trustee shall thereafter make suitable provision for said daughters out of such income and shall pay the balance of such income to said Freda J. Friedmann."

Article II (B) to (F), inclusive, provided for the use and disposition of the income and corpus of the trust after the death of Freda J. Friedmann. After that event the principal beneficiaries were the two daughters and their issue, if any. Petitioner was not named as a beneficiary except to the extent of a bare possibility of reverter in case he survived his divorced wife, his two minor daughters, and their issue, if any.

Article III (A) authorized and directed the trustee to retain the preferred stock of Ed. Schuster & Co. until such stock should be redeemed. Under this article the trustee had no right to sell or otherwise dispose of such stock, "without the written consent of the Settlor" or unless no dividends had been paid for two calendar years. In the event of the latter, if the trustee desired to sell, it had to offer the stock first to the settlor, the petitioner herein.

Article IV of the trust agreement in part provided:

(A) The Settlor hereby agrees that, if dividends aggregating at least Ten Thousand Dollars ($10,000) are not paid upon said preferred stock of Ed. Schuster & Co., Incorporated, in any one calendar year during the lifetime of the Settlor, he will pay to the Trustee the difference between the dividends, if any, received on said preferred stock and Ten Thousand Dollars ($10,000). In the event that the Settlor is required to pay any money to the Trustee on account of such guaranty and thereafter arrears on accumulated dividends on said preferred stock are paid, the Trustee shall, out of such payments received on account of arrears on accumulated dividends, first reserve sufficient of such dividend moneys which, when added to the payments made by the Settlor, will equal the sum of Fifteen Thousand Seven Hundred and Fifty Dollars ($15,750) a year, (being the annual dividend accrual on said preferred stock) for each of said years; the difference between the payments received on account of arrears on accumulated dividends by the Trustee and the amounts retained by the Trustee as hereinbefore provided shall be paid out by the Trustee to the Settlor to be applied by him on such advances made by him by reason of such guaranty; provided, however, that no such payments shall be made by the Trustee to the Settlor until all dividends payable on said preferred stock for the then current year up to the date upon which such dividends have been received by the Trustee on arrears of stock have been paid; it being the intent and purpose that the Trustee shall not have or retain for the trust estate more than an aggregate of

Fifteen Thousand Seven Hundred Fifty Dollars ($15,750) per annum from the combined dividends on said preferred stock and the payments by the Settlor. Any sums received by the Trustee from the Settlor by virtue of such guaranty shall be treated by the Trustee as income of the trust estate. Bankruptcy or insolvency of said Ed. Schuster & Co., Incorporated, shall in no wise relieve the Settlor from his agreement to pay the difference between the dividends, if any, received on said preferred stock and Ten Thousand Dollars ($10,000) per annum.

(B) If all or any part of said preferred stock of said Ed. Schuster & Co., Incorporated, shall be redeemed by said corporation or sold in accordance with the terms hereof and the net proceeds of such redemption or sale shall be reinvested by the Trustee to yield less than seven per cent. (7%) per annum in the form of interest or dividends, the Settlor hereby agrees, during his lifetime, to pay to the Trustee the difference between the actual amount received as a yield thereon and the amount that would have been received had the Trustee obtained a yield of seven per cent. (7%) per annum thereon, but in no event shall the Settlor be required to pay to the Trustee annually more than an amount equivalent to two per cent. (2%) of the par value of said stock. Any sums received by the Trustee from the Settlor by virtue of such agreement shall be treated by the Trustee as income of the trust estate.

During the years 1935, 1936, and 1937 a reasonable portion of the income of the trust so distributed to Freda J. Friedmann by the trustee which was allocable to the support, maintenance, and education of the two minor daughters was $3,550 per year, based upon the following items:

| | | | |
|---|---|---|---|
| Food | $750 | Nursemaid | $1,000 |
| Clothing | 600 | Miscellaneous | 400 |
| Medical and dental treatment | 500 | | |
| Private schooling | 300 | Total | 3,550 |

On May 13, 1936, Freda J. Friedmann married Alan A. Shephard, and after that marriage by the terms of said trust she was still entitled to receive and did continue to receive all of the net income thereof.

The amounts of the income of the trust for the years 1935, 1936, and 1937 distributed to Freda J. Friedmann by the trustee pursuant to the terms of the trust were as follows: 1935, $16,311; 1936, $16,609.07, and 1937, $16,953.25.

On December 6, 1938, petitioner as plaintiff commenced an action against the Wisconsin Tax Commission and the assessor of incomes, defendants. The question in the suit involved the taxability under the state income tax law of $561 of the income of the above mentioned alimony trust for the year 1935. Apparently the taxability of the remainder of the income, $15,750 dividends from Ed. Schuster & Co., was not involved. Petitioner had not reported any of the $561 as income in his state income tax return, but upon an audit of his books the entire amount of $561 was added as income. The Circuit Court for Milwaukee County held that petitioner was taxable only on so much of the $561 as $3,550, being the amount required for the support of his minor children, bore to $16,311, being the total net income of the trust, or a net taxable income from the trust of $122.10. From

the judgment of the Circuit Court the defendants appealed to the Supreme Court of Wisconsin. The latter court affirmed the judgment of the Circuit Court on June 24, 1940. See *Friedmann* v. *Tax Commission*, 235 Wis. 237; 292 N. W. 894.

The respondent has determined that the entire amounts of $16,311, $16,609.07, and $16,953.25 distributed to petitioner's divorced wife in 1935, 1936, and 1937, respectively, are taxable to petitioner within the purview of sections 22 (a), 162 (b), and 167 of the Revenue Acts of 1934 and 1936, and requests that his determination in this respect be approved in full. These sections are identical in both acts and the material provisions thereof are set forth in the margin.[1]

As previously stated, petitioner concedes that $3,550 of each of the above amounts is taxable to him, but he contends that under *Friedmann* v. *Tax Commission*, *supra*, he is not taxable on the balance. In the alternative, petitioner contends that if he is taxable on any amount in excess of $3,550 for each year, the taxable amount can not exceed $4,500 for each year, being the amount of the guaranty under article IV (B) of the trust agreement (2 percent of the par value of 2,250 shares of stock). In this connection he also contends that the conceded taxable amount of $3,550 should be included within the amount of $4,500, and that there was no guaranty under article IV (A) of the trust agreement, but merely an agreement to advance with the expectation of being repaid.

The taxability of income from alimony trusts has been considered by the United States Supreme Court in *Douglas* v. *Willcuts*, 296 U. S. 1; 970; *Helvering* v. *Fitch*, 309 U. S. 149; *Helvering* v. *Leonard*, 310 U. S. 80; *Helvering* v. *Fuller*, 310 U. S. 69; and *Pearce* v. *Commissioner*,

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries. wages, or compensation for personal service, or whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent. dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

 *  *  *  *  *  *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. * * *

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

 *  *  *  *  *  *

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; * * *

then such part of the income of the trust shall be included in computing the net income of the grantor.

315 U. S. 543. See Taxation of Alimony Trusts by Alan L. Gornick, Taxes (The Tax Magazine), September 1942. In *Pearce* v. *Commissioner, supra,* the Supreme Court said:

We do not think that that was a correct application of the rule of the *Fitch* and *Leonard* cases. Those cases hold that the income is taxable to the former husband not only where it is clear that payments to his ex-wife were made pursuant to a *continuing liability created by his contract or by local law* but also where *his undertaking or local law* makes that question doubtful or uncertain. Those cases, like *Douglas* v. *Willcuts,* supra, involved situations where the divorced husband was sought to be taxed on payments to his ex-wife. But the rule which they express supplies the criteria for determining, in absence of a different statutory formula, whether payments received by the ex-wife are properly taxable to her or to her divorced husband. If the Commissioner proceeds against the ex-wife, she sustains her burden of rebutting his presumptively correct determination merely by showing doubts and uncertainties as to whether the payments were made pursuant to her former husband's continuing obligation to support her. If the Commissioner proceeds against her former husband he sustains his burden by submitting clear and convincing proof that the payments were not made pursuant to any such continuing obligation. * * *  [Italics supplied.]

In the instant proceeding we think petitioner has submitted clear and convincing proof that the payments in excess of $3,550 for each year were not made pursuant to any continuing obligation created by local law. *Friedmann* v. *Tax Commission, supra.* Under the laws of Wisconsin the property settlement which petitioner made with his wife was final and complete. Any continuing obligation which rested upon him under the contract was by reason of voluntary obligations which he assumed under the contract and not by reason of any obligations imposed upon him by the laws of the State of Wisconsin. The Supreme Court of Wisconsin makes that clear in its opinion in the above cited case where it says:

* * * His obligations after the entry of the judgment were referable not to the marital status of the parties but to the obligations of the parties under the contract. They no more affect the final division of the estate of the parties than does a warranty in a deed conveying lands to the trustee or directly to the wife.

But while we think petitioner has submitted clear proof that he is no longer under any legal obligation to support his divorced wife by reason of the laws of Wisconsin, we do not think that petitioner has submitted proof that the entire payments in excess of $3,550 for each year were not made pursuant to any continuing obligation created by his contract. *Helvering* v. *Leonard, supra.* The burden was on petitioner to prove by clear and convincing evidence that the alimony trust left "no continuing obligation however contingent." *Helvering* v. *Fitch, supra.*

Under article IV (A) of the trust agreement "The Settlor hereby agrees that, if dividends aggregating at least Ten Thousand Dollars ($10,000) are not paid upon said preferred stock of Ed. Schuster

& Co., Incorporated, in any one calendar year during the lifetime of the Settlor, he will pay to the Trustee the difference between the dividends, if any, received on said preferred stock and Ten Thousand Dollars ($10,000)."

In *Helvering* v. *Leonard, supra,* while a divorce suit was pending Leonard and his wife entered into a separation agreement and with a corporate trustee executed a trust agreement. Part of the corpus of the trust consisted of $400,000 of 6 percent bonds of an oil company. Leonard guaranteed payment of both principal and interest on these bonds and in case of default agreed to substitute cash or other property for them. The divorce decree approved and affirmed and made the separation and trust agreements a part of the judgment. The Supreme Court held that the portion of the trust income which was received from the guaranteed bonds was "clearly taxable" to Leonard, the respondent. In so holding the Supreme Court said it was not material that the personal obligation was contingent and that the fact that Leonard might never have to make good on his promise was beside the point.

Article IV (A) also provided that "In the event that the Settlor is required to pay any money to the Trustee on account of such guaranty" and thereafter all accumulated dividends are paid in full to the trustee, then the trustee shall reimburse petitioner for the "advances made by him by reason of such guaranty." Petitioner contends that because of this provision his promise in the first sentence of article IV (A) to pay to the trustee the difference between the dividends, if any, and $10,000, is in effect a promise to loan and is not a true guaranty. We do not agree. Petitioner's obligation to make up any deficiency was unconditional, whereas the possibility of his being reimbursed was conditional upon all accumulated dividends being paid in full. The former might happen, whereas the latter might never happen. The former answers the description of "continuing obligation however contingent." *Helvering* v. *Fitch, supra.*

It was the "obligations of the parties under the contract" that the United States Supreme Court in *Helvering* v. *Leonard, supra,* said were "determinative" of that phase of the case. The judgment of divorce in the instant case did not relieve petitioner of his continuing contingent obligation to pay the trustee $10,000 a year if no dividends were declared on the preferred stock. Instead, it actually placed a sanction on that obligation.

Finally, petitioner contends that his obligations under article IV of the trust agreement were in legal effect no greater than those of the taxpayers in *Jessie W. Donahue,* 44 B. T. A. 329; affirmed *per curiam* by the Circuit Court of Appeals, Second Circuit, 128 Fed. (2d) 739, and *Bush* v. *Commissioner,* 133 Fed. (2d) 1005, and that under these decisions we should hold that the income of the trust for each year

in excess of the $3,550 is not taxable to petitioner. We think these cases are distinguishable from the instant proceeding on their facts. In the *Bush* case the Second Circuit held that the husband "was guaranteeing the income of property which had previously belonged to the wife plus income derived from additional property transferred for her benefit by third persons." We do not have that situation here. The *Donahue* case did not involve a so-called alimony trust. The trusts involved in that case were established by a widow for the benefit of the brothers and sisters of her deceased husband. At the time the trusts were created there existed no legal enforceable obligation, whereas the contrary is true in the instant proceeding.

We hold, therefore, that the guaranty contained in the trust agreement transformed petitioner's preexisting legal obligation of support to a continuing contractual obligation of support, although contingent, to the extent of at least $10,000 each year so that the payment of this sum each year was in satisfaction of petitioner's debt and was taxable to him under sections 22 (a) and 162 (b) of the Revenue Acts of 1934 and 1936. *Douglas v. Willcuts, supra; Helvering v. Leonard, supra.* Cf. *Halbert P. Gillette,* 46 B. T. A. 573.

We hold also that there is no merit in petitioner's contention that if any portion of the income of the trust be held taxable to him by reason of the guaranty provisions contained in article IV of the trust agreement, then the amount of $3,550 conceded by petitioner to be taxable to him each year by reason of its use for the support, maintenance, and education of his minor daughters should be included within and considered a part of the guaranty. There was no provision in the trust agreement directing that income from certain sources be used for the support of the children and that income from certain other sources be used for the support of their mother. The $3,550 used for the support of the children could have been taken from the first $10,000 received as dividends from the preferred stock or it could have been taken from the income of the trust other than the first $10,000 received as dividends from the preferred stock. In the absence of any specific direction in the trust agreement as to for whom each class of income is to be used, we think it must be held that petitioner is taxable on the trust income under sections 22 (a) and 162 (b) to the extent of at least $13,550 each year. The situation is somewhat analogous to one of the issues presented in *Walter L. Ferris,* 1 T. C. 992, wherein we said:

* * * There is no basis in the record for concluding that the $1,200 used for the son or any part of it was paid out of the $1,563.74 which petitioner was entitled to receive but which he left in the trust. Hence, both of these sums are taxable to petitioner.

The above holdings dispose of all the trust income except $2,761. $3,059.07, and $3,403.25 for each of the three years in question. The

respondent contends that these amounts are taxable to petitioner under section 167 (a) (2) of the Revenue Acts of 1934 and 1936 as that provision is interpreted in *Helvering* v. *Stuart*, 317 U. S. 154. In fact the respondent in his brief suggests that the language of section 167 (a) (2) as thus construed by the Supreme Court in the *Stuart* case is broad enough to reach the entire net income of the trust for each of the years in question. Petitioner contends, however, that this phase of the case is controlled by *Walter L. Ferris, supra.* We agree with petitioner that the *Ferris* case is controlling on this point.

We hold that petitioner is not taxable on any part of the net income of the trust for any of the years in question under section 167 (a) (2) of the Revenue Acts of 1934 and 1936. *Walter L. Ferris, supra.* Neither do we think that the balance of the trust income for the years in question in the respective amounts of $2,761, $3,059.07, and $3,403.25 is taxable to petitioner under the rule of *Helvering* v. *Clifford*, 309 U. S. 331, and the respondent has not contended that it was so taxable. But, as indicated in *Helvering* v. *Fuller, supra*, and *Pearce* v. *Commissioner, supra*, a case of this type has not been adequately considered without passing upon the applicability of the rule of the *Clifford* case. The trust is irrevocable and to the extent of this balance of the trust income the settlor retained no right or interest in the trust property and therefore ceased to be the owner for purposes of the Federal revenue acts.

The deficiencies should be redetermined by including in petitioner's income only $13,550 of the trust income for each of the years in question, and by allowing the deduction of $102.57 conceded by the respondent for the year 1937.

*Decision will be entered under Rule 50.*