CLAUDE R. BRANCH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 94248. Promulgated December 7, 1939.

*Charles Ryan, Esq.*, for the petitioner.
*Davis Haskin, Esq.*, for the respondent.

OPINION.

SMITH: This is a proceeding for the redetermination of a deficiency in petitioner's income tax for 1934 in the amount of $1,763.24. The questions presented for decision are (1) whether the petitioner is entitled to deduct from gross income as ordinary and necessary expenses in carrying on business the amount of $1,553, and (2) whether the petitioner is liable to income tax upon $9,295 income of a trust which was reported for income tax purposes by the petitioner's wife, Hope S. Branch.

The first issue has been settled by stipulation of the parties. The petitioner is entitled to the deduction of $1,165.12 as ordinary and necessary expenses. The deduction of $387.88 was properly disallowed by the respondent in the determination of the deficiency.

In the audit of the petitioner's income tax return for 1934 the respondent increased the dividends reported by the petitioner in the amount of $9,295, which represented the income of a certain trust created by the petitioner on August 18, 1928. The receipt of these dividends was accounted for by the petitioner's wife in her own income tax return. In the deficiency notice the respondent states:

It is the opinion of this office that since you as grantor may revest title to the corpus of the trust, in yourself if you survive your wife, it is a revocable trust under section 166, of the Revenue Act of 1934, and article 166–1, of Regulations 86, as amended by T. D. 4626, and the income of the trust is taxable to you.

Claude R. Branch is a resident of Providence, Rhode Island, and a practicing attorney, with offices in Providence and Boston.

The trust in question was created by the petitioner on August 18, 1928, soon after his marriage and was evidenced by an indenture executed by him as party of the first part, and by him, Walter A. Edwards, and William H. Edwards, as trustees, parties of the second part. By said indenture petitioner assigned and transferred to the trustees certain certificates representing the shares of stock mentioned therein. At the time some of the securities constituting the corpus of the trust were held by the Rhode Island Hospital Trust Co. as collateral on certain promissory notes of the petitioner in the amount of $400,000. Some of the securities constituting the corpus of the trust were upon the creation of the trust transferred from the name of the petitioner to the name of one of the other trustees under said trust and the rest were transferred from the name of the petitioner to the names of all three trustees as trustees under the trust. The principal of the trust estate has at all times consisted of shares of stock and occasionally cash received as proceeds from sales of securities. The income has consisted solely of income on stocks. All dividends received and all cash received as proceeds of sales of securities have been deposited in a checking account in the names of all

1046

three trustees, as trustees, and all of the certificates of stock have stood in the name of one of the trustees other than the petitioner, or in the name of all three trustees as trustees under the trust.

The trust instrument shows the assignment of the securities to the trustees and provides:

that notwithstanding the foregoing assignment, said CLAUDE R. BRANCH, or his executors or administrators, may, and he hereby reserves for himself and his executors and administrators, the right and power to, at any time or from time to time, pledge or mortgage to said Trust Company [Rhode Island Hospital Trust Co.], any or all of the trust estate as hereinafter defined, which shall at the time be pledged or mortgaged to secure any promissory note or notes made by him or them and held by said Trust Company, and also investments made with the proceeds of such pledged or mortgaged property, for the purpose of securing the payment, both principal and interest, of any promissory note or notes given in renewal in whole or in part of said note or notes so secured, and provided, further, that any such pledge or mortgage may be upon such terms and conditions as said Trust Company shall require, but any and all property pledged or mortgaged under the foregoing power shall, subject to said pledge or mortgage, be and remain subject to the trusts hereinafter declared and set forth.

The trust further provided:

The trustees shall pay to HOPE S. BRANCH during her lifetime, quarter-yearly or oftener in their discretion, the entire net income from the trust estate, as the same shall accrue due, and not by way of anticipation, for her separate use, to be enjoyed by her as an inalienable personal provision, free whenever she shall be covert from all control and engagements of her husband; and for such income her receipts alone shall be sufficient discharges to the trustees.

Upon the death of Hope S. Branch the entire trust property was to be paid to the grantor if living and, if not, held in such further trust as Hope S. Branch should appoint in her will, or, in default of such appointment, distributed to the grantor's surviving children or their issue *per stirpes*.

Paragraph second (7) of the trust instrument provides:

It shall be lawful for the trustees to deliver securities to said CLAUDE R. BRANCH for the purpose of enabling him to sell or pledge the same or to exercise rights of conversion, exchange or subscription in connection therewith under the powers hereinafter conferred upon him; and any other trustee or trustees shall not be accountable for any securities so delivered to said CLAUDE R. BRANCH or for the proceeds of the sale thereof or any securities received in exchange therefor or subscribed for by him until placed by him in the control of such trustee or trustees, nor shall any trustee or trustees be accountable for any securities purchased by said CLAUDE R. BRANCH under the power hereinafter conferred upon him until said securities have been delivered into his or their control.

Paragraph second (8) of the instrument provides in part:

And so long as said CLAUDE R. BRANCH shall be a trustee hereunder, he may in his discretion himself alone exercise the powers of investment, of varying investments and of reinvestment hereby conferred upon the trustees and exercise rights of conversion, exchange or subscription in connection with any securities

included in the trust estate, and his decision as to the advisability of any such action shall be sufficient without the concurrence of or without consultation with the other trustee or trustees for the time being, and for the purpose of the sale and transfer of any investments or the exchange of any investments or the exercise of any rights of conversion, exchange or subscription his endorsement or signature alone shall be sufficient. * * *

Paragraph second (10) of the instrument provides:

It shall be lawful for the trustees to purchase investments from or sell investments to said CLAUDE R. BRANCH, and such purchases or sales may be made as well by said CLAUDE R. BRANCH alone under the powers herein conferred upon him as by the trustees under the powers herein conferred upon them.

Paragraph second (18) provides in part:

Provided, and it is hereby declared as a limitation upon all the foregoing provisions and powers, that it shall be lawful for said HOPE S. BRANCH during the joint lives of herself and said CLAUDE R. BRANCH, at any time or from time to time, by any proper instrument in writing under her hand and duly acknowledged by her before any magistrate or notary public, to revoke the foregoing uses and trusts as to all or any part or parts of the trust estate, and to appoint the same to new, further or other uses, in whole or in part, and to vest the same in the same trustees or in any new or other trustee or trustees, and upon and with new, further or other trusts, powers, discretions and limitations, or in herself, or in any other person or persons, freed and discharged of all trusts, as she may see fit.

The foregoing trusts are intended to be, and are hereby declared to be, irrevocable by said CLAUDE R. BRANCH. And said CLAUDE R. BRANCH hereby covenants, for himself and his executors and administrators, with the trustees from time to time under the foregoing trusts and with HOPE S. BRANCH and any and all other beneficiaries under said trusts that he will, and his executors and administrators shall, indemnify and save harmless said HOPE S. BRANCH, said trustees and said beneficiaries and the trust estate from and against any loss accruing to the trust estate or the income therefrom by reason of any resort to the trust estate, or any part thereof, for the payment of the principal and/or interest of any promissory note or notes of said CLAUDE R. BRANCH secured at any time by a pledge of the trust estate, or any part thereof; *but it shall be lawful for the trustees to determine the amount of any liability of said Claude R. Branch, or his executors or administrators, on account of the foregoing covenant and any determination made by them shall be binding upon the trust estate and the beneficiaries under the foregoing trusts.* But nothing herein contained shall preclude the withdrawal by said CLAUDE R. BRANCH, or his executors or administrators of any collateral not included in the trust estate pledged for the security of any such note or notes, the permission hereby accorded, however, not to operate or limit in any wise any liability under the foregoing covenant. [Italics supplied.]

At all times since the creation of the trust the three trustees named in the indenture as trustees have been acting as such. At no time has any property belonging to the trust estate been delivered to the petitioner except for the purpose of enabling him to deal with it in accordance with the trust indenture and the petitioner has never used any property of the trust estate except as part of the trust estate in the manner permitted by the trust indenture.

The petitioner has not used any of the trust property for his individual purposes except to pledge the same as collateral for his individual notes representing indebtedness for which it was originally pledged or notes taking the place of such notes. The trust company to which the securities in the trust estate were pledged has never sold any of the securities in the trust estate or resorted to any part of the trust estate, and has never received any of the income from the trust estate.

Hope S. Branch is still alive and is the wife of the petitioner. During the year 1934 the trustees deposited all the income of the trust estate for that year (which consisted solely of $9,295 in dividends) in a personal checking account of Hope S. Branch in a bank except $100 thereof, which was paid as trustees' fees to Walter A. Edwards and William H. Edwards. No payment of any kind was made to the petitioner by the trustees.

No person except Hope S. Branch has ever been authorized to draw checks on her checking account or to make withdrawals therefrom.

From August 18, 1928, to December 31, 1934, the petitioner paid for the maintenance and support of his wife or paid other sums sufficient for that purpose. Hope S. Branch during 1934 and all other years prior thereto used the income from the trust estate for whatever purposes she desired and applied no part of it to the payment of premiums on policies of insurance on the life of the petitioner. Petitioner at no time from August 18, 1928, to December 31, 1934, received any part of the income from the trust estate.

During the year 1934 the active handling of the receipt and disbursement of the income of the trust estate was done entirely by William H. Edwards, one of the trustees, or his personal secretary under his direction.

Section 166 of the Revenue Act of 1934 provides as follows:

SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust shall be included in computing the net income of the grantor.

Although in his deficiency notice the respondent asserts in effect that, because the grantor may obtain the corpus of the trust if he survives his wife, "it is a revocable trust under section 166, of the Revenue Act of 1934", he makes no such contention in his brief. We think it is untenable. See *H. Rodney Sharp*, 38 B. T. A. 166;

*John Edward Rovensky*, 37 B. T. A. 702; *Phebe Warren McKean Downs*, 36 B. T. A. 1129; *Henry A. B. Dunning*, 36 B. T. A. 1222; *United States* v. *First National Bank of Birmingham* (C. C. A., 5th Cir.), 74 Fed. (2d) 360; *Shanley* v. *Bowers* (C. C. A., 2d Cir.), 81 Fed. (2d) 13.

In his brief the respondent relies upon two contentions—that "(a) The petitioner had the power to have the entire corpus exhausted in satisfaction of his personal note", and "(b) The petitioner had complete direct control over the trust corpus."

Upon the first point the respondent argues that when the trust was established the trust *res* was subject to a $400,000 encumbrance and in the event of default by the petitioner the bank had the right to exhaust the trust *res* to satisfy the petitioner's obligation; that this action could be taken by the bank without any recourse against the bank by the trustees or beneficiary because the bank's lien was superior to the title or interest of the trustees or beneficiary.

The respondent submits:

Under these circumstances how simple indeed for the grantor to effect a revocation of the trust! All the petitioner had to do was to default in the payment of his note to the bank. The bank would thereupon foreclose upon the security, the trust corpus. To the extent of the value of the trust property the petitioner would have his obligation to the bank satisfied. The trust would be void of assets.

We think there is no warrant in the stipulated facts for this contention. In the first place, it was only a portion of the assets of the trust *res* which was pledged for the security of the notes. There is therefore no basis for the respondent's contention that if the bank sold the collateral pledged to secure the notes the trust would be without assets. In the second place, the respondent gives no weight to the petitioner's obligation to the trust to make good any loss which might be sustained by the trust as a result of the pledge of the securities to secure his promissory notes.

The respondent calls particular attention to the portion of paragraph second (18) of the trust instrument which has been italicised above and reads as follows:

but it shall be lawful for the trustees to determine the amount of any liability of said CLAUDE R. BRANCH, or his executors or administrators, on account of the foregoing covenant and any determination made by them shall be binding upon the trust estate and the beneficiaries under the foregoing trusts. * * *

The respondent argues that by virtue of this provision the petitioner alone may determine his liability to the trust in case of any loss which the trust might sustain by reason of a sale of pledged securities. It should be noted, however, that it is not the petitioner alone who is to determine the amount of the loss but the trustees, only one of whom was the petitioner. We are therefore of the opinion

that there is no merit in the respondent's contention that the petitioner had the power to have the entire corpus exhausted in satisfaction of his personal notes.

The respondent's second contention is that "The petitioner had complete direct control over the trust corpus." He argues that, since the interests of the trustees were not adverse to the grantor's interests, *Reinecke* v. *Smith*, 289 U. S. 172, "his wish was their wish, his determination their determination." This argument is inconclusive. The trustees are under a legal duty to protect and conserve the trust assets. In the administration of trust estates it is a well established rule of law that "A trustee must use the same care for the safety of the trust fund, and for the interests of the *cestui que trust*, that he uses for his own property and interests." Perry on Trusts and Trustees, 7th Ed., vol. I, § 441. "The first care of the law is the safety of the trust fund. Upon this truism depends every rule which has been made for the conduct of the trustees." *In re Union Trust Co. of New York*, 149 N. Y. S. 324.

It must be assumed that in all discretionary matters all trustees here, of whom there were two other than the petitioner, were to act in the best interests of the trust as they were legally bound to do. In so doing they would, of course, require the petitioner to make full restitution to the trust of any loss sustained by reason of the pledge of its assets on petitioner's note.

The respondent further argues that by the express provisions of the trust agreement the petitioner retained such broad powers over the trust corpus that he must be regarded "as in substance the owner of the corpus." In support of this contention respondent relies upon article 166-1 of Regulations 86, as amended, following the decision in *Douglas* v. *Willcuts*, 296 U. S. 1, by Treasury Decision 4629, which reads in part as follows:

But the provisions of section 166 are not to be regarded as excluding from taxation to the grantor the income of other trusts, not specified therein, in which the grantor is, for the purposes of the Act, similarly regarded as remaining in substance the owner of the corpus. The grantor is regarded as in substance the owner of the corpus, if, in view of the essential nature and purpose of the trust, it is apparent that the grantor has failed to part permanently and definitely with the substantial incidents of ownership in the corpus.

\* \* \* \* \* \* \*

(d) If the grantor is regarded as remaining in substance the owner of the corpus the gross income of such corpus shall be included in the gross income of the grantor, and he shall be allowed those deductions with respect to the corpus as he would have been entitled to had the trust not been created.

It is clear from the trust agreement that the petitioner's reserved powers over the trust corpus to which the respondent refers, such as to invest, sell, or exchange the securities held by the trustees, were to be exercised by him as trustee and not as grantor of the trust. The fact

that in the exercise of such powers the petitioner could act alone and without the concurrence of the other trustees was not detrimental to the trust. In no event could he have appropriated any of the trust funds to his own use without violating his trust. Again we must assume that the petitioner's acts as trustee would have been for the best interests of the trust.

Even within the broad scope of the Commissioner's amended regulations we do not think that the provisions of the trust agreement can be construed as leaving the petitioner in substance the owner of the securities which he conveyed to the trust. Neither do the subsequent acts of the parties lend support to that contention. It appears from the stipulated facts that there has never been any misuse of the trust funds or any departure from strict adherence to the provisions of the trust agreement. Cf *Benjamin F. Wollman*, 31 B. T. A. 37; *William C. Rands*, 34 B. T. A. 1107.

The respondent erred in including the dividends from the trust securities, which were paid to petitioner's wife as beneficiary of the trust, in petitioner's gross income.

*Decision will be entered under Rule 50.*