Ernest W. Krause v. Commissioner.
Ernest W. Krause v. Commissioner
Docket No. 3010.
United States Tax Court
1945 Tax Ct. Memo LEXIS 80; 4 T.C.M. (CCH) 895; T.C.M. (RIA) 45299; September 21, 1945
William Callahan, Esq., Geo. C. Bencke, Esq., and John Wiseman,C.P.A., 405 Wheeling Bank & Trust Bldg., Wheeling, West Va., for the petitioner. Robert H. Kinderman, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioner's income tax in the amounts of $5,635.71 for 1940 and $12,544.64 for 1941. *81 The only question for decision is whether the Commissioner erred in including in the petitioner's income for these two years the income of four trusts established by the petitioner for his four children and the income of several trusts which he established for the benefit of his first wife. Findings of Fact The petitioner is an individual residing in Wheeling, West Virginia. His returns for the years in question were filed with the collector of internal revenue for the West Virginia District at Parkersburg. The petitioner and his first wife, Lillie Mae Krause, were married in 1903. Four of their children, all adults, Howard C., David, Mary Elizabeth and Pauline Krause Prince, were living during the taxable years. The petitioner began to live apart from his wife and children on July 19, 1932 and since then has never lived with any of them. Thereafter the petitioner, his wife and their four children were not an intimate family group. The four children, above mentioned, continued to live with their mother for some time after their father left and shortly after he left she sued him for support and maintenance of herself and the then minor children. The Court, on January 11, 1933, ordered *82 the petitioner to pay his wife $200 a month. The Court, acting pursuant to an amended Bill of Complaint filed on May 27, 1937, entered a new order on July 8, 1937 vacating and entirely superseding the original order. The new order required that the petitioner continue to provide Lillie Mae with a home and pay her $3,600 a year for her support and maintenance, beginning as of January 1, 1937, part of which was to come from a trust established by the petitioner for Lillie Mae on December 8, 1936. The petitioner obtained an absolute divorce from Lillie Mae in Arkansas on April 6, 1938. The decree makes no reference to alimony or any property settlement. The petitioner married his present wife, June U. Carroll in 1938. Lillie Mae obtained an absolute divorce from the petitioner in Ohio County, West Virginia on December 13, 1940 on the ground of desertion. This decree recited that the parties had consummated a property settlement in full and complete satisfaction of all property and estate rights under which the petitioner had made a property settlement upon Lillie Mae which she had accepted. It discharged all of her rights in his estate and was in full satisfaction of the award and *83 compensation prayed for in her Bill of Complaint. The petitioner, pursuant to the settlement, gave Lillie Mae $5,000 in cash, a deed to the Krause home in which she lived, and 750 shares of stock of the Wheeling Machine Products Company (hereafter referred to as Products) and also executed for the benefit of Lillie Mae an "Indenture of Second Trust" dated December 9, 1940 and an "Amended Indenture of Trust" dated December 9, 1940 which superseded another trust dated December 8, 1936, referred to in the order of the Court dated July 8, 1937. The Court approved and confirmed the property settlement and decreed that it was in full settlement of all dower rights and claims of any kind of Lillie Mae in the present and future property and estate of the petitioner. The decree superseded the earlier orders of the Court. The petitioner, at all times material hereto, was president, manager, and the largest stockholder of Products. There were more than 80 other stockholders and the petitioner was at no time the owner or in control of a majority of the stock. His wealth and income was more than he needed for his own purposes. Lillie Mae, at all times material hereto, had complete confidence *84 in his ability and willingness to manage Products for the best interests of all stockholders. The petitioner, on December 8, 1936, created five separate trusts by separate instruments, one for the benefit of his wife and one for the benefit of each of his four children. The youngest child was then twenty years and ten months old. She lived with her mother and was the only child who was not self-supporting at that time. Lillie Mae had no means of support except that furnished by the petitioner. The petitioner, in establishing the trusts, wanted to provide some income for his children. He felt that two of them were too extravagant and needed to be restricted in the use of their money. The petitioner placed 400 shares of Products stock in the trust which he created for Lillie Mae on December 8, 1936. The original trustees of that trust were Alfred Briese, vice president and treasurer of Products, June U. Carroll, assistant treasurer of Products, and the petitioner. They were given broad powers of management. They were required to furnish annual statements to the donor and after his decease, to the beneficiaries. They were to receive 1 per cent per annum from the income received. *85 They could hold or distribute income from the trust in their discretion. The trust was not to be subject to any rights of creditors of the beneficiaries. If an original beneficiary should predecease the donor, the trust and income was to be paid to the issue of the beneficiary upon the death of the donor. Trustees had the right to resign by giving notice to the donor, and "upon payment and delivery to the donor or any successor Trustee or Trustees, as hereafter provided, if the Donor is deceased, all of the property and assets of the trust estate and full settlement of his accounts." The donor, during his lifetime, and the remaining trustees, after his death, could select successor trustees to fill vacancies. The donor reserved the right to change the trustees during his lifetime and in case he relieved a trustee, that trustee was to turn over all of the assets of the trust to the remaining trustees. If the donor failed to appoint a new trustee to fill the vacancy, then the remaining trustees were to select one. The petitioner also reserved the right to terminate the trust at any time that he might desire, and upon termination of the trust, all of the assets in the hands of the trustees *86 were to be delivered to the beneficiaries under the trust. After the donor dies, the income of the trust is to be paid to the beneficiaries quarterly and the trust is to terminate in 20 years. The donor expressly surrendered all rights to amend, modify or revoke, but retained the right to appoint other beneficiaries if all the possible beneficiaries named in the trust should predecease him. The trusts for each of the four children were the same as the above described trust, except that only 100 shares of Products stock was placed in each of those trusts. The four trusts for the children continued throughout the taxable years here in question. Alfred Briese and June U. Carroll, at the request of the petitioner, resigned as trustees of all five trusts on August 19, 1937 and on October 29, 1937 the petitioner appointed The National Exchange Bank of Wheeling and one of its vice presidents, Louis J. Yaeger, as trustees for each of the five trusts. They continued as trustees until December 1940. Lillie Mae advised the petitioner shortly after he had received his Arkansas divorce that she intended instituting proceedings to invalidate the decree. Thereafter negotiations were had, as *87 a result of which a settlement of property rights between the petitioner and Lillie Mae was reached and the petitioner agreed to the entry of a decree by the West Virginia Court divorcing the couple and settling their property rights in the manner above described. The "Amended Indenture of Trust", which was a part of the property settlement, was dated December 9, 1940. The parties thereto included the petitioner, the trustees, Lillie Mae and the four children. It recited that Lillie Mae and the petitioner had decided to amend and reform the indenture of trust executed on December 8, 1936 for the benefit of Lillie Mae with the approval of the Court in the divorce proceeding. This so-called "amended" trust was a complete new trust. This new instrument provided that the petitioner could name one trustee, Lillie Mae, the beneficiary, could name another, and the two were to select the third. The trustees selected were the petitioner, D. Paul Camilletti, Lillie Mae's attorney, and The Exchange National Bank of Wheeling. It provided that if the net income of the "Indenture of Second Trust" contemporaneously executed is insufficient during the lifetime of the petitioner to pay Lillie Mae *88 $400 a month for life, then the deficiency is to be paid from the income of the trust now being described, beginning January 1, 1941. Any income of the trust not needed for the above purpose is to be accumulated and held in a separate "accumulated net income account." This latter fund can be used to make up any deficiency in the $400 monthly payments to Lillie Mae. The entire account is to be paid to Lillie Mae at the death of the petitioner and thereafter the entire income of the trust is to be distributed to Lillie Mae. The trust is to terminate upon her death, if she survived the petitioner, and everything in the trust is to go to such persons as she may name in her will or to her heirs if she dies intestate. If she should predecease the petitioner, she has the right to name the persons to whom the income of the trust is to go during the petitioner's life and upon his death the trust is to terminate and the trust property is to go to such persons as she may name in her will, or if she dies intestate, then to her heirs. There is also a complicated provision for the payment of income taxes before any excess income is accumulated and also for the payment of any estate tax on the petitioner's *89 estate resulting from the inclusion of the trust property therein. The trustees have broad powers of management. Statements are to be furnished as in the prior trusts. The trustees are to receive compensation not to exceed 6 per cent. The petitioner and Lillie Mae have power to remove the trustee named by them on short notice, and those two have the right to remove the third trustee upon a similar notice. The petitioner reserved the right to direct the trustees to retain, during his lifetime, any Products shares owned by the trust and he also reserved the right to vote any Products stock owned by the trust during his lifetime. The trust was irrevocable and not subject to modification in any manner. All doubts as to the provisions of the trust were to be resolved in favor of the beneficiaries. The original corpus of the "amended" trust consisted of 3,360 shares of Products common stock, 7 shares of Products 6 per cent preferred, 150 shares of other stock, and about $1,000 in cash. The "Indenture of Second Trust" executed December 9, 1940 named the same persons as trustees as were named in the "Amended Indenture of Trust" and contained many provisions similar to the provisions of *90 that trust. The most important differences are: the net income is to be paid, during the life of the petitioner, to Lillie Mae, and upon her death to her nominees or heirs if she dies intestate; the corpus of the trust can be invaded, if necessary, to make the payments of $400 monthly to Lillie Mae; the trust is to terminate upon the death of the petitioner, at which time all of the trust funds are to be paid to Lillie Mae, those appointed by her will, or to her heirs, as the case may be; the trust referred to the provision in the "Amended Indenture of Trust" in regard to payment of income and estate taxes; the original trust corpus consisted of 4,000 shares of Products stock. This trust was likewise irrevocable and not subject to change. The Commissioner, in determining the deficiencies, included in the income of the petitioner, income of the trusts above described in the following amounts: Beneficiary
1940
1941
Lillie Mae Krause
$5,281.46
$6,831.67
David Krause
1,334.50
955.39
Pauline Krause Prince
1,334.19
954.74
Mary Elizabeth Krause
1,350.63
962.75
Howard C. Krause
1,350.50
950.48
Included herein by this reference are the stipulations of *91 facts filed by the parties and all exhibits made a part thereof. Opinion MURDOCK, Judge: The Commissioner, in the notice of deficiency, gave no explanation for taxing the income of the trusts to the petitioner. He contends, in his brief, that his action is justified under section 166, 167 and 22(a), I.R.C., and also by the decision of the Supreme Court in Helvering v. Clifford, 309 U.S. 331. Section 166 is entitled "Revocable Trusts" and provides that where the power to revest in the grantor title to any part of the corpus is vested in the grantor, and in any person not having a substantial adverse interest, then the income of such part of the trust shall be taxed to the grantor. Section 167 is entitled, "Income for Benefit of Grantor" and provides for taxing to the grantor of the trust income which can be distributed to him currently or in the future. The four trusts which the petitioner established for his four children can be discussed as a group. They were irrevocable. It is obvious from the record that these trusts were not set up by the petitioner as a tax evasion scheme. The petitioner retained the power to terminate them, but if he exercised *92 that power, the entire trust properties would go immediately to the beneficiaries named and no part of the corpus would revest in the petitioner. He also retained the power to name new beneficiaries if all of the beneficiaries originally named should predecease him. This, of course, was a contingency over which the petition had no control and, which might or might not happen, but until it should happen no power was vested in the petitioner. Of course, if the contingency should happen, then, he could recapture the corpus and any income which happened to be undistributed at that time. Actually, his son, Howard, died childless in 1942 and the petitioner named the other three children as beneficiaries of his trust. It has been held, under somewhat similar circumstances, that such a power does not make the income of the trust taxable to the grantor under either 166 or 167 prior to the vesting of the power by the happening of the contingency. Commissioner v. Branch, 114 Fed. (2d) 985 (25 A.F.T.R. 765), affirming 40 B.T.A. 1044; Betts v. Commissioner, 123 Fed. (2d) 534. No part of the income of these trusts was ever to be distributed to the petitioner *93 or to be used to discharge any legal obligation of his. All of the children were of age during the taxable years. One of them had married and at least three of them were self-supporting. The petitioner was under no legal obligation to support any of them. Thus, Douglas v. Willcuts, 296 U.S. 1, does not apply to the trusts for the children. Central National Bank of Cleveland v. Commissioner, 141 Fed, (2d) 352. We hold that the income of these four trusts is not taxable to the petitioner under either 166 or 167. The petitioner and the beneficiaries of these trusts were not an intimate family group after he deserted his family in 1932. He never lived with any of them after that time. He was not legally obligated to support any of them during the taxable years. They were not all friendly towards him. The trusts were to continue for the lives of the beneficiaries or until 20 years after the death of the petitioner, whichever should prove to be the earlier date. The petitioner reserved the right to terminate the trusts at any time, but, upon termination, all of the trust property was to go to the beneficiaries. Thepetitioner also retained the power to replace trustees, but *94 the trusts were to continue with three trustees. The petitioner had no greater power in the management of the trust properties than either of the other two trustees. The other two trustees during the taxable years, the bank and the vice president of the bank, were selected by the petitioner and could be replaced by him, but no trustees could permit themselves to be mere puppets of the petitioner at the expense of the trust or to the detriment of the beneficiaries. The law would not permit that. All of the trustees were bound by law to act honestly and to exercise sound discretion for the benefit of the trusts and the beneficiaries. The petitioner retained no power to vote the stock of Products held by the trustees or to require the retention of that stock. The trustees could distribute or withhold the income as they saw fit, but this power was not vested in the petitioner alone. Furthermore, the three trustees would have to exercise a sound discretion which means that there would have to be some reasonable basis for their decision in regard to distribution or withholding of income. They, certainly, could not store it up just on the chance that the petitioner might survive the beneficiaries. *95 We are not able to find in these four trusts for the children a sufficient parallel with the Clifford case to justify taxing the income of the trusts to the petitioner under section 22(a). It is obvious from the entire record that the petitioner created the 1936 trust for Lillie Mae in order to discharge, at least in part, his duty to support and maintain her. Later the Court ordered him to support her and referred to the trust in the order. Income of the trust was used for her support during the taxable year 1940. It is true that the petitioner had obtained a divorce from Lillie Mae in Arkansas in 1938 and had remarried in that same year, but he has wholly failed to show that he did not have a continuing obligation to support Lillie Mae until she obtained her divorce at the end of 1940. Douglas v. Willcuts, supra; Helvering v. Fitch, 309 U.S. 149. Furthermore, we are not able to determine, from this record, that less than all of the income of the trust for 1940 was used to discharge a continuing obligation of the petitioner. The evidence shows that a large part of the income was paid to, or for the benefit of, Lillie Mae and the only part as to which there *96 might be any doubt was the amount invested in additional securities for the trust and some excess cash, all of which remained in the trust and was turned over to the trustees under the amendment in the early part of December 1940. If this latter was not otherwise taxable to the petitioner, it certainly was used for his benefit by becoming a part of the corpus of the new trust under which he obtained the final property settlement. The 1940 income of the trust for Lillie Mae was taxable to the petitioner. Douglas v. Willcuts, supra. Lillie Mae, in December 1940, obtained an absolute divorce from the petitioner under the laws of West Virginia and in connection therewith she and the petitioner made a complete and final settlement of all property rights and claims resulting from their marriage. The settlement was approved by the Court and made a part of its decree. It was absolutely final and, thereafter, the petitioner owed Lillie Mae no further obligation resulting from their marriage. Thus, the 1941 income of the two new trusts for the benefit of Lillie Mae is not taxable to the petitioner on the theory that it discharged some obligation of his under the principle established *97 by Douglas v. Willcuts, supra.Helvering v. Fuller, 310 U.S. 69; Pearce v. Commissioner, 315 U.S. 543. Cf. Helvering v. Fitch, supra.The petitioner had no control whatsoever over the income or corpus of the two new trusts created by him on December 9, 1940 and no possibility of ever recovering any of either. He was given the voting rights of the Products stock contained in those trusts because Lillie Mae thought he was the best person to have it for her own good. Certainly the possession of voting rights of some stock in a trust, under the circumstances here present, would not make the income taxable to the grantor. The 1941 income of the two new trusts for Lillie Mae was not taxable to the petitioner. Decision will be entered under Rule 50.